IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM PATRICK GARCIA, | No. 2:23-CV-2098-DMC-P |
| Plaintiff, | |
| v. | ORDER |
| D. DENBERG, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's original complaint, ECF No. 1.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a). This provision also applies if the plaintiff was incarcerated at the time the action was initiated even if the litigant was subsequently released from custody. See Olivas v. Nevada ex rel. Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017). The Court must dismiss a complaint or portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can be granted; or (3) seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b)(1), (2). Moreover, the Federal Rules of Civil Procedure require that complaints contain a ". . . short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This means that claims must be stated simply,

concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I. PLAINTIFF'S ALLEGATIONS

Plaintiff William Garcia names as defendants: (1) B. Denberg, (2) D. Cueva, Warden, (3) C. Gipson, Director of Adult Institutions, (4) F. Quitugua, Sergeant, (5) K. Armstrong, Correctional Officer, (6) B. Williams, Correctional Officer, (7) T. Russell, Correctional Officer, (8) A. Silva, Correctional Officer, (9) J. Kinross, Correctional Officer, (10) H. Felix, Prisoner, and (11) R. Rivera, Prisoner. See ECF No. 1, pg. 1. Plaintiff alleges violations of his Eighth and Fourteenth Amendment rights. See id. at 21-22.

In his first claim, Plaintiff asserts that Defendants violated his right to be free from cruel and unusual punishment, failure to protect, deliberate indifference to his need for safety, health and well-being under the Eighth Amendment. Plaintiff asserts that Defendants knew that the two active gang member inmates brought into the J-Wing unit were going to attack inmates based on prior incidents. Plaintiff asserts that Defendants knew that inmates would get hurt, but instead of protecting the safety of vulnerable inmates, Defendants twice condoned the attacks on Plaintiff and did not act.

Plaintiff asserts that by being placed in the general population setting, Plaintiff's life, health and welfare are in jeopardy due to his severe medical conditions. See id. at 9.  Plaintiff is 90% confined to his bed due to severe pain and was placed as an "permanent OHU" patient due to his medical needs. See id. Plaintiff claims that he is danger of harm due to his severe medical conditions and is therefore unable to function in a normal general population setting. See id. Plaintiff asserts that he is unable to defend or protect himself from being attacked by younger

prison inmates. See id. at 10. According to Plaintiff, since Plaintiff's arrival to J-1 Wing, active gang members have been transferred to SNY [special needs yard]. Plaintiff contends that the admittance of active gang inmates has put a green light for SNY inmates to be severely assaulted or killed. See id.

According to Plaintiff, Defendant Gipson distributed a letter onto inmate tablets stating in part: "unfortunately, integration 'HAS NOT BEEN SUCCESSFUL FOR ALL GROUPS.' While CDCR fully believes a person's behavior should determine where they are housed, we also recognize the integration was not working for some people. The department has developed a plan to allow the maximum number of people to program peacefully without threat of violence." Id. Plaintiff contends that Defendants know that inmates are in danger of being assaulted, Defendants encourage fights to take place, and that the fights are ultimately being allowed by Defendant Gipson through her subordinates who set the attacks up. See id.

Plaintiff asserts that, on August 18, 2022, Plaintiff was standing in line to receive insulin at the regular time when inmates were informed that three active gang inmates would be brought in based on orders given by Defendant Denberg. See id. Plaintiff alleges that he complained to Denberg regarding the dangerous position the inmates would be put in due to the active gang inmates being escorted in at the time inmates with medical conditions received their medication. See id. According to Plaintiff, when the active gang inmates entered, I/M #1 dropped his bed roll and began attacking Plaintiff.  Plaintiff asserts that he threw punches back and I/M #1 fell to the ground on his stomach. See id. at 11-12. Plaintiff asserts the correctional officers restrained I/M #1 and the other two active gang inmates, while directing all inmates to get on the floor. See id. at 11. According to Plaintiff, due to his mobile impairments, Plaintiff is exempt from getting on the ground and is instead supposed to sit in his wheel-walker. See id. at 12. Plaintiff asserts that, as he was beginning to sit down on the ground, I/M #2 jumped up, ran over to Plaintiff, and kicked Plaintiff in the face. See id. According to Plaintiff, the correctional officers let I/M # 2 get up and allowed I/M #2 to assault Plaintiff. See id. at 17. Plaintiff contends that his jaw was broken in two places due to this assault, and that an unidentified correctional officer let I/M #2 assault Plaintiff. See id. Plaintiff was then taken to TIA-Treatment and Triage

3

1  Area. See id. at 12.

2  According to Plaintiff, Defendants condoned the attacks on Plaintiff, and did not act until Plaintiff attempted to retaliate against the inmates that assaulted Plaintiff. See id. Plaintiff asserts that Defendants did not head Plaintiff's concerns about being assaulted by active gang inmates, participated in causing Plaintiff harm, and hid the facts. See id.  Plaintiff asserts that Defendants violated Plaintiff's constitutional right to be free from cruel and unusual punishment, failure to protect, deliberate indifference to his safety and well-being. See id. at 21.

In his second claim, Plaintiff asserts Defendants' violated Plaintiff's Fourteenth Amendment right to due process, equal protection, and deliberate indifference without fear of prosecution for falsifying State documents, and covering up a crime and crime scene, and lying to the District Attorney/Prosecutor Office and to the Judge trying his criminal case. See id. at 22. Plaintiff asserts that Defendants' falsified state documents and allowed Plaintiff to be assaulted by two different active gang inmates at separate times. See id. According to Plaintiff, Defendants created the situation, failed to protect Plaintiff, and participated in causing Plaintiff real harm and knowingly violated Plaintiff's Fourteenth Amendment Rights. See id.

Plaintiff received a surgery for his broken jaw on August 19, 2022, in which the operational orders were to place two plates in Plaintiff's jaw. See id. Plaintiff asserts that he later found out that the doctor that performed his surgery only placed one plate in his mouth and now his mouth does not line up. See id.  On August 23, 2022, Plaintiff was informed he was being transferred to California Health Care Facility (CHCF) and would be placed in CHCF Out-Patient Housing Unit (OHU). See id. Plaintiff was placed on a liquid diet as his jaw was wired shut post-surgery. See id.  According to Plaintiff, even though he was placed on a strictly liquid diet, the staff brought Plaintiff solid food from the August 23 to August 28, 2022. See id. Plaintiff asserts that since he was not able to eat the solid foods, he was starved for those five days. See id. Plaintiff further contends that he was denied the opportunity to see a doctor or nutritionist. See id. at 14. Plaintiff states that he was also taken off of pain mediation which left him in severe pain. See id.

///

1          According to Plaintiff, on September 1, 2022, Plaintiff filed a 602 [inmate
2  grievance] regarding the incident in which his jaw was broken and the events previously
3  discussed. See id. On September 1, 2022, Plaintiff asserts that he asked RN Yatassaye – who is
4  not a named defendants – to place Plaintiff on the doctor's line. RN Yatassaye informed Plaintiff
5  that he could only see the doctor every 28 days. See id. Plaintiff therefore requested a 7362
6  Medical Request Form for emergent urgent routine scheduling to see his doctor. See id. Plaintiff
7  asserts that he told RN Yatassaye that CDCR must supply inmates with a means to see a doctor or
8  dentist. See id.  Plaintiff contends that he informed the RN and correctional officer that he was
9  having a hard time breathing, felt like passing out, and was in a state of distress and needed to be
10 taken to TTA for assessment and evaluation. See id. at 15. Plaintiff claims that RN Yatassaye and
11 a correctional officer informed Plaintiff that emergency services like this were not available and
12 to go lay down in his dorm. See id.
13          Plaintiff asserts he then filed multiples reasonable accommodation requests
14 because he was denied medical care, as there was no doctor present at CHCF. See id. Plaintiff
15 asserts that when a doctor was present at the facility, Plaintiff was informed that he would need to
16 go to the Napa Valley Pain Center to receive a specialized shot and subsequently a procedure for
17 his severe pain and nerve damage. See id.  Plaintiff asserts that he eventually got an appointment
18 to get this procedure. See id. Plaintiff claims that his procedure was cancelled based on a lie that
19 Plaintiff refused medical treatment. See id. Plaintiff asserts that he did not sign a refusal of care
20 and was instead denied his necessary treatment and care. See id. at 16. Plaintiff asserts that
21 because of Defendants' actions Plaintiff is still suffering and is just beginning to receive his
22 necessary treatment. See id.
23          According to Plaintiff, he received a final decision on his inmate grievance
24 "granting in full" exactly what Plaintiff claimed on January 5, 2023. See id. Plaintiff alleges that
25 he subsequently sent a 602 "Request to Implement Remedies" to the Remedies Compliance
26 Coordinator on January 11, 2023. See id. Plaintiff then received a memo informing Plaintiff that
27 he prematurely filed a third level response. See id. Plaintiff asserts that he had sixty days from the
28 date to file and he submitted his third level remedy within six days. Plaintiff asserts that he was

deliberately screened out of his third level remedy in an effort to void his grievance. See id. Plaintiff claims that he then sent out his grievance for the final level response on February 8, 2023, but has not received any response. According to Plaintiff, 602 grievances are thrown away and hidden, ultimately resulting failure to exhaust all remedies. See id.

Plaintiff alleges that he requested a copy of the incident report from August 18, 2022, multiple times but that officers have refused to give Plaintiff a copy. See id. Plaintiff subsequently filed a 602 grievance requesting a copy of the incident report. Plaintiff received an Office of Grievance Decision stating that the matter would be solved internally by CDCR staff on March 14, 2023. See id. Plaintiff asserts that upon reading this decision, Plaintiff found that Defendants falsified the incident to cover up their actions. See id. at 17. According to Plaintiff, the report stated that Plaintiff was jumped by I/M #1 and I/M #2, and that officers attempted spray all inmates. See id. Plaintiff asserts that what Defendants claimed was false and Defendants were attempting to cover up their actions.

Plaintiff subsequently filed another 602 grievance on March 15, 2023, for the falsification of state documents and a request for a polygraph test given per the Department Operational Manual. See id. at 18. Plaintiff later spoke to an Internal Affairs lieutenant, and they discussed the falsification of incident report. See id. The lieutenant informed Plaintiff that he was conducting an investigation and would update Plaintiff on the outcome. See id. After waiting for the outcome until May 2023, Plaintiff submitted three letters to Internal Affairs, the Attorney General's Office, and the Director of Correction to allege that the incident was being swept under the rug. See id. Plaintiff received a response only from the Attorney General's Office, stating it may be best to contact the Inspector General's Office. See id.

Plaintiff then received a letter from Defendant Cueva, claiming "the investigation or inquiry failed to disclose a preponderance of evidence to prove or disprove the allegations made in the complaint." Id. Although Plaintiff received this letter on May 30, 2023, Plaintiff asserts that his 602 grievance still had not been returned. See id. at 19. Plaintiff claims that all of his efforts to exhaust and receive a final outcome are being stopped. See id.

///

Plaintiff alleges that on July 9, 2023, Plaintiff filed another 602 grievance requesting the return of Plaintiff's 602, and instead of complying, Plaintiff's 602 was screened out for time constraints. See id. Plaintiff then wrote a letter to Defendant Cueva stating that employees must submit to a polygraph test when the integrity, character, or conduct of a correctional officer is called into question. See id. at 20. Plaintiff additionally informed Defendant Cueva in this letter that it seemed as though Cueva was attempting to protect or condone the actions of the correctional officers. See id. According to Plaintiff, Defendant Cueva returned this letter and attached to it was a 602 Claimant Grievance Receipt Acknowledgment. See id.

## II.  DISCUSSION

Plaintiff's complaint suffers multiple defects. First, Plaintiff cannot assert a stand-alone due process claim related to the administrative grievance process (second claim). Second, Plaintiff fails to allege each individual defendant's causal role in the alleged constitutional deprivation (first and second claims). Third, Plaintiff fails to provide specific facts to establish Defendants had a sufficiently culpable state of mind to allow I/M #1 and I/M #2 to inflict harm on Plaintiff (first claim).  Fourth, Plaintiff has not asserted sufficient facts to establish the liability of Defendants Cueva and Gipson as supervisory defendants (first and second claims).  Finally, Plaintiff cannot sustain civil rights claims against other inmates because they are not state actors.

### A.   **Grievance Process**

Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process).  Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances.   Numerous district courts in this circuit have reached the same conclusion. See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address

7

grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).

Here, Plaintiff discusses in detail the multiple delays that occurred when Plaintiff filed multiple 602 inmate grievances and ultimately the 602 grievance for falsification of state documents. Plaintiff asserts that he received a letter from the warden regarding a grievance stating the grievance failed to disclose evidence to prove or disprove allegations made in the complaint. Plaintiff later alleges that his grievances were being screened out and covered up in order to conceal the facts of Plaintiff's claims and to thwart Plaintiff's ability to exhaust administrative remedies. According to Plaintiff, Defendants' actions violated his right to due process. As discussed above, prisoners have no stand-alone due process rights related to administrative grievance processes, except to the extent interference with the grievance process amounts to a denial of access to the courts, which is not alleged here. Should Defendants argue failure to exhaust as an affirmative defense, Plaintiff's allegations may be relevant to that issue, which is not currently before the Court.

### B.     Causal Link

To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual connection or link between the actions of the named defendants and the alleged deprivations. See Monell v. Dep't of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the plaintiff must set forth specific facts as to each individual defendant's causal role in the alleged constitutional

8

deprivation. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988).

Here, Plaintiff's claims do not appear to present specific facts regarding each defendant's causal role in the alleged constitutional deprivation. Instead, Plaintiff refers to the Defendants collectively as "Defendants" and "they" without identifying individuals involved in each incident.

In Plaintiff's first claim regarding the assault that took place, Plaintiff asserts that Defendant Gipson distributed a letter to all inmate Tablets addressing the integration of Active inmates into the unit. Although this letter shows that Gipson was aware of the new dangers within the department, it does not provide sufficient evidence to show Gipson knew of the danger and allowed the assault to occur. Plaintiff identifies a "tall, white" correctional officer, Defendant Denberg, and another unidentified correctional officer before the altercation. Plaintiff asserts that Defendant Denberg allowed the inmates to assault Plaintiff but does not allege any specific facts to show Denberg's involvement.

In Plaintiff's second claim, Plaintiff asserts that "they" falsified the report of the altercation but, again, does not identify the individual correctional officers involved during the assault. Plaintiff alleges that "all of [the] Defendants' falsified the incident report to cover up their actions."

Plaintiff will be provided leave to amend to allege facts showing how each named defendant individually participated in or cause a violation of Plaintiff's constitutional or statutory rights.

C. **Safety Under the Eighth Amendment**

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.   See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with

"food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. See Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. See Farmer, 511 U.S. at 844.

Here, Plaintiff fails to provide specific facts to establish the individual defendant's state of mind in the altercation with I/M #1 and I/M #2. Defendant Denberg is the only Defendant directly named in Plaintiff's complaint at the time of the altercation. Plaintiff asserts that Denberg allowed the two inmates to assault Plaintiff, but Plaintiff fails to provide sufficient facts to show that Plaintiff had more than a mere suspicion of danger, or that Defendant Denberg knew about a danger to Plaintiff's safety. Again, Plaintiff will be provided leave to amend.

///

**D.     Supervisor Liability**

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. See id. The Supreme Court has rejected the notion that a supervisory defendant can be liable based on knowledge and acquiescence in a subordinate's unconstitutional conduct because government officials, regardless of their title, can only be held liable under § 1983 for his or her own conduct and not the conduct of others. See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009). Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may, however, be liable even where such personnel do not overtly participate in the offensive act. See Redman v. Cnty of San Diego, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).

When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." Iqbal, 662 U.S. at 676.

In this case, Plaintiff asserts liability against Defendant Gipson and Cueva in a supervisory capacity. Plaintiff names Defendant Gipson as a defendant stating that Gipson disregarded Plaintiff's safety. However, Plaintiff fails to provide sufficient facts to show Gipson's actions as an individual that violated Plaintiff's constitutional rights. Additionally, Plaintiff names Defendant Cueva as a defendant but fails to provide any facts as to Cueva's personal involvement. Plaintiff will be provided leave to amend.

/ / /

/ / /

**E.    Claims Against Other Inmates**

Generally, private parties are not acting under color of state law. See Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991); see also Simmons v. Sacramento Cty. Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003) (explaining that a lawyer in private practice does not act under color of state law). Here, Plaintiff names two inmates – Felix and Rivera – who are presumably I/M #1 and I/M #2, the inmates who assaulted him allegedly with Defendants' knowledge and assent. Felix and Rivera, however, are not state actors but are private individuals against whom Plaintiff cannot sustain a civil rights action. This defect cannot be cured through amendment and, should Felix and Rivera continued to be named in any amended pleading, the Court will recommend they be dismissed with prejudice.

### III.  CONCLUSION

Because it is possible that the deficiencies identified in this order may be cured by amending the complaint, Plaintiff is entitled to leave to amend prior to dismissal of the entire action. See Lopez v. Smith, 203 F.3d 1122, 1126, 1131 (9th Cir. 2000) (en banc). Plaintiff is informed that, as a general rule, an amended complaint supersedes the original complaint. See Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992). Thus, following dismissal with leave to amend, all claims alleged in the original complaint which are not alleged in the amended complaint are waived. See King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). Therefore, if Plaintiff amends the complaint, the Court cannot refer to the prior pleading in order to make Plaintiff's amended complaint complete. See Local Rule 220. An amended complaint must be complete in itself without reference to any prior pleading. See id.

If Plaintiff chooses to amend the complaint, Plaintiff must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights. See Ellis v. Cassidy, 625 F.2d 227 (9th Cir. 1980). The complaint must allege in specific terms how each named defendant is involved, and must set forth some affirmative link or connection between each defendant's actions and the claimed deprivation. See May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Finally, Plaintiff is warned that failure to file an amended complaint within the time provided in this order may be grounds for dismissal of this action. See Ferdik, 963 F.2d at 1260-61; see also Local Rule 110. Plaintiff is also warned that a complaint which fails to comply with Rule 8 may, in the Court's discretion, be dismissed with prejudice pursuant to Rule 41(b). See Nevijel v. North Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981).

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's original complaint is dismissed with leave to amend; and
2. Plaintiff shall file a first amended complaint within 30 days of the date of service of this order.

Dated: March 22, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE