1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11   WILLIAM PATRICK GARCIA,                    No.  2:23-CV-2098-DMC-P

12                    Plaintiff,

13         v.                                    ORDER

14   D. DENBERG, et al.,                         and

15                    Defendants.                FINDINGS AND RECOMMENDATIONS

16

17          Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to

18   42 U.S.C. § 1983.  Pending before the Court is Plaintiff's first amended complaint, ECF No. 11.

19          The Court is required to screen complaints brought by prisoners seeking relief

20   against a governmental entity or officer or employee of a governmental entity.  See 28 U.S.C.

21   § 1915A(a).  This provision also applies if the plaintiff was incarcerated at the time the action was

22   initiated even if the litigant was subsequently released from custody.  See Olivas v. Nevada ex rel.

23   Dep't of Corr., 856 F.3d 1281, 1282 (9th Cir. 2017).  The Court must dismiss a complaint or

24   portion thereof if it: (1) is frivolous or malicious; (2) fails to state a claim upon which relief can

25   be granted; or (3) seeks monetary relief from a defendant who is immune from such relief.  See

26   28 U.S.C. § 1915A(b)(1), (2).  Moreover, the Federal Rules of Civil Procedure require that

27   complaints contain a ". . . short and plain statement of the claim showing that the pleader is

28   entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This means that claims must be stated simply,

concisely, and directly.  See McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996) (referring to Fed. R. Civ. P. 8(e)(1)).  These rules are satisfied if the complaint gives the defendant fair notice of the plaintiff's claim and the grounds upon which it rests.  See Kimes v. Stone, 84 F.3d 1121, 1129 (9th Cir. 1996).  Because Plaintiff must allege with at least some degree of particularity overt acts by specific defendants which support the claims, vague and conclusory allegations fail to satisfy this standard.  Additionally, it is impossible for the Court to conduct the screening required by law when the allegations are vague and conclusory.

## I.  PLAINTIFF'S ALLEGATIONS

Plaintiff William Garcia names the following as defendants: (1) B. Denberg (Lieutenant), (2) G. Kong (Correctional Officer), (3) J. Kinross (Correctional Officer), (4) A. Silva (Correctional Officer), (5) C. Gipson (Director of Adult Institutions), and (6) K. Armstrong (Correctional Officer). See ECF No. 11, pgs. 1, 5-7.   R. Rivera, H. Felix, T. Russell, F. Quitugua, and D. Cueva, who were named in the original complaint, are not named in the operative first amended complaint.  All currently named defendants, except Defendant Gipson, are alleged to be current or former prison officials at the California Medical Facility.  See id.  Defendant Gipson is alleged to be the current or former Director of Adult Institutions for the California Department of Corrections and Rehabilitation.  See id.

Plaintiff asserts that on November 5, 2020, Plaintiff was wrongfully removed from the Out-Patient-Housing Unit (OHU) into Add/Seg [Administrative Segregation]. See id. at 6. Plaintiff is 90% confined to his bed due to severe pain and was placed as a "permanent OHU" patient due to his medical needs. See id.  Plaintiff claims that he is danger of harm due to his severe medical conditions and is therefore unable to function in the normal general population setting. See id. at 8. Plaintiff has filed multiple inmate grievances and reasonable accommodation requests explaining his medical needs. See id.  Plaintiff asserts that he is unable to defend or protect himself from being attacked by younger prison inmates. See id. According to Plaintiff, since arrival at J-1 Wing, active gang members have been transferred to the SNY [sensitive needs yard]. Plaintiff contends that the admittance of active gang inmates has put a green light for SNY

inmates to be severely assaulted or killed. See id. at 9. Plaintiff claims that Defendant Gipson knows SNY inmates need to be held separately from active gang inmates because SNY inmates are considered rats, rapists, or child molesters and are to be assaulted on sight by gang members. See id.

According to Plaintiff, Defendant Gipson distributed a letter onto inmate tablets stating in part: "unfortunately, integration 'HAS NOT BEEN SUCCESSFUL FOR ALL GROUPS.' Id. at 9. While CDCR fully believes a person's behavior should determine where they are housed. We also recognize the integration was not working for some people. The department has developed a plan to allow the maximum number of people to the program peacefully without threat of violence." Id. Plaintiff contends that Defendants know that inmates are in danger of being assaulted, that Defendants encourage fights to take place, and that fights are ultimately being allowed by Defendant Gipson through her subordinates who set up the attacks. See id.

Plaintiff further asserts that, on August 18, 2022, Plaintiff was standing in line to receive insulin at the regular time when inmates were informed that three active gang inmates would be brought in based on orders given by Defendant Denberg. See id. at 10. Plaintiff alleges that he complained to Denberg regarding the dangerous position the inmates would be put in due to the active gang inmates being escorted in at the time inmates with medical conditions received their medication. See id. Plaintiff asserts that Defendants Kinross and Kong also had knowledge that these inmates would attack someone, so they walked in front of the active inmates to avoid getting hurt. See id.

According to Plaintiff, when the active gang inmates entered, I/M #1 dropped his bed roll and began attacking Plaintiff. See id. at 10. Plaintiff then threw punches back and I/M #1 fell to the ground on his stomach. See id.  Plaintiff asserts the correctional officers restrained I/M #1 and the other two active inmates, while directing all inmates to get on the floor. See id. Plaintiff asserts that Defendants Kong and Kinross, who were escorting I/M #1, did nothing to stop the assault against Plaintiff. See id. According to Plaintiff, due to his mobility impairments, Plaintiff is exempt from getting on the ground and is instead required to sit in his wheel-walker. See id. at 12. Plaintiff asserts that, as he was beginning to sit down on the ground, I/M #2 jumped

1   up, ran over to Plaintiff, and kicked Plaintiff in the face. See id. According to Plaintiff,

2   Defendants Armstrong, Kinross, Kong, Silva, and Denberg failed to protect Plaintiff from harm,

3   and instead stood back and allowed the attack to happen. See id.  Plaintiff asserts that Defendants

4   had knowledge of the likelihood that active gang inmates would attempt to assault vulnerable

5   inmates. See id.  Plaintiff's jaw was broken in two places due to this assault. Plaintiff was then

6   taken to medical triage area and later received surgery for his broken jawbone. See id. at 12-13.

7        Plaintiff asserts that his injury was a result of two deliberate acts. First, Defendant

8   Gipson's order directing active and SNY inmates together regardless of the high risk of harm. See

9   id. at 13. Second, the failure of prison staff to protect SNY inmates from being harmed by active

10  inmates. See id.

11       Next, Plaintiff asserts Defendants violated Plaintiff's Fourteenth Amendment

12  rights to due process and equal protection. See id. at 17. Plaintiff asserts that Defendants falsified

13  State documents and allowed Plaintiff to be assaulted by two different active gang inmates at

14  separate times. See id. According to Plaintiff, Defendants created the situation, failed to protect

15  Plaintiff, participated in causing Plaintiff real harm, and knowingly violated Plaintiff's Fourteenth

16  Amendment rights. See id.

17       According to Plaintiff, on September 1, 2022, Plaintiff filed a 602 [inmate

18  grievance] regarding the incident in which his jaw was broken and the events previously

19  discussed. See id. at 13.  Plaintiff received a decision back and a was assigned a third-level

20  remedies compliance coordinator. See id. Plaintiff asserts that he then sent the third-level

21  remedies out six days after he received it. See id. Plaintiff asserts that he was deliberately

22  screened out of his third-level remedy in an effort to void his grievance. See id.

23       Plaintiff alleges that he requested a copy of the incident report from August 18,

24  2022, multiple times but that officers have refused to give Plaintiff a copy. See id. Plaintiff

25  subsequently filed a 602-grievance requesting a copy of the incident report. Plaintiff received an

26  Office of Grievance Decision stating that the matter would be solved internally by staff on March

27  14, 2023. See id. Plaintiff asserts that upon reading this decision, Plaintiff found that Defendants

28  falsified the incident to cover up their actions. See id. at 14. According to Plaintiff, the report

1   stated that Plaintiff was jumped by I/M #1 and I/M #2, and that officers attempted spray all

2   inmates. See id. Plaintiff asserts that what Defendants claimed was false and Defendants were

3   attempting to cover up their actions. See id.

4          Plaintiff then filed another inmate grievance on March 15, 2023, for falsification

5   of state documents and a request for a polygraph test given per the Department Operational

6   Manual. See id. at 15. Plaintiff later spoke to an Internal Affairs lieutenant, and they discussed the

7   falsification of incident report. See id. The lieutenant informed Plaintiff that he was investigating

8   and would update Plaintiff on the outcome. See id. After waiting for the outcome until May 2023,

9   Plaintiff submitted three letters to Internal Affairs, the Attorney General's Office, and the

10  Director of Correction to allege that the incident was being swept under the rug. See id. Plaintiff

11  received a response only from the Attorney General's Office, stating it may be best to contact the

12  Inspector General's Office. See id.

13         Plaintiff then received a letter from D. Cueva, claiming "the investigation or

14  inquiry failed to disclose a preponderance of evidence to prove or disprove the allegations made

15  in the complaint." Id. Although Plaintiff received this letter on May 30, 2023, Plaintiff asserts that

16  his 602-grievance still had not been returned. See id. Plaintiff asserts that in June 2023, Captain

17  Stevens informed Plaintiff that they were still investigating the 602-grievance for falsification of

18  State documents. However, Plaintiff believes that they never intended to return his 602-grievance

19  and instead have disregarded it entirely. See id. at 16.

20

21                                  **II.  DISCUSSION**

22         The Court finds that Plaintiff's first amended complaint states a cognizable Eighth

23  Amendment safety claim against Defendant Gipson arising from the placement of active gang

24  members on the sensitive needs yard starting in November 2020.  The first amended complaint

25  also stated cognizable Eighth Amendment safety claims against Defendants Denberg, Armstrong,

26  Kinross, Kong, and Silva arising from the assault occurring on August 18, 2022.  By separate

27  order, the Court will direct service of the first amended complaint as to these claims and

28  defendants.

Plaintiff's due process claim relating to his inmate grievances, however, fails for two primary reasons.  First, Plaintiff cannot sustain a stand-alone claim based on handling of his inmate grievances and Plaintiff has not alleged that the handling of his inmate grievances resulted in a denial of access to the courts.  Second, Plaintiff has not alleged facts to link any named defendant to a violation of Plaintiff's rights relative to the handling of his inmate grievances.  Plaintiff has previously been advised of these defects and it does not appear that further leave to amend would be fruitful.

### A.    No Stand-Alone Claim Related to the Grievance Process

Prisoners have no stand-alone due process rights related to the administrative grievance process.  See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process).  Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process grievances.   Numerous district courts in this circuit have reached the same conclusion.  See Smith v. Calderon, 1999 WL 1051947 (N.D. Cal 1999) (finding that failure to properly process grievances did not violate any constitutional right); Cage v. Cambra, 1996 WL 506863 (N.D. Cal. 1996) (concluding that prison officials' failure to properly process and address grievances does not support constitutional claim); James v. U.S. Marshal's Service, 1995 WL 29580 (N.D. Cal. 1995) (dismissing complaint without leave to amend because failure to process a grievance did not implicate a protected liberty interest); Murray v. Marshall, 1994 WL 245967 (N.D. Cal. 1994) (concluding that prisoner's claim that grievance process failed to function properly failed to state a claim under § 1983).

Here, as with the original complaint, Plaintiff discusses in detail the multiple delays that occurred when Plaintiff filed various inmate grievances.  Plaintiff asserts that he received a letter from the warden regarding a grievance stating the grievance failed to disclose evidence to prove or disprove allegations made in the complaint. Plaintiff later alleges that his grievances were being screened out and covered up in order to conceal the facts of Plaintiff's claims and to thwart Plaintiff's ability to exhaust administrative remedies. According to Plaintiff,

1   Defendants' actions violated his right to due process. As discussed above, prisoners have no

2   stand-alone due process rights related to administrative grievance processes, except to the extent

3   interference with the grievance process amounts to a denial of access to the courts, which is not

4   alleged here.  Should Defendants argue failure to exhaust as an affirmative defense, Plaintiff's

5   allegations may be relevant to that issue, which is not currently before the Court.

6          Plaintiff was previously advised of the foregoing principles and provided an

7   opportunity to amend.  It does not appear that further leave to amend will cure the defect.

8          **B.     <u>Failure to Allege Facts Showing a Causal Link</u>**

9          To state a claim under 42 U.S.C. § 1983, the plaintiff must allege an actual

10   connection or link between the actions of the named defendants and the alleged deprivations.  <u>See</u>

11   <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658 (1978); <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976).  "A

12   person 'subjects' another to the deprivation of a constitutional right, within the meaning of

13   § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform

14   an act which he is legally required to do that causes the deprivation of which complaint is made."

15   <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).  Vague and conclusory allegations

16   concerning the involvement of official personnel in civil rights violations are not sufficient.  <u>See</u>

17   <u>Ivey v. Board of Regents</u>, 673 F.2d 266, 268 (9th Cir. 1982).  Rather, the plaintiff must set forth

18   specific facts as to each individual defendant's causal role in the alleged constitutional

19   deprivation.  <u>See</u> <u>Leer v. Murphy</u>, 844 F.2d 628, 634 (9th Cir. 1988).

20          Here, except for Plaintiff's Eighth Amendment claims, Plaintiff does not present

21   specific facts regarding each named defendant's causal role in the alleged constitutional

22   deprivation relating to Plaintiff's inmate grievances. Instead, Plaintiff refers to the Defendants

23   collectively as "Defendants" and "they" without identifying individuals involved or explaining

24   their conduct.  Again, because Plaintiff has been previously advised of this defect, it does not

25   appear that further leave to amend would be fruitful.

26   / / /

27   / / /

28   / / /

7

### III. CONCLUSION

Based on the foregoing, the undersigned orders and recommends as follows:

1.      It is ORDERED that the Clerk of the Court is directed to randomly assign a District Judge to this case.

2.      It is ORDERED that the Clerk of the Court is directed to terminate R. Rivera, H. Felix, T. Russell, F. Quitugua, and D. Cueva as defendants to this action.

3.      It is RECOMMENDED that this action proceed on Plaintiff's Eighth Amendment safety claims against all defendants named in the first amended complaint and that all other claims be DISMISSED for failure to state a claim.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  June 5, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

8