IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM PATRICK GARCIA, | No. 2:23-CV-2098-KJM-DMC-P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| B. DENBERG, et al., | |
| Defendants. | |

Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the Court is Plaintiff's motion for injunctive relief. See ECF No. 2.

**I. BACKGROUND**

**A.** **Plaintiff's Allegations**

This action currently proceeds on Plaintiff's first amended complaint. See ECF No. 11. Plaintiff names the following as defendants: (1) B. Denberg (Lieutenant), (2) G. Kong (Correctional Officer), (3) J. Kinross (Correctional Officer), (4) A. Silva (Correctional Officer), (5) C. Gipson (Director of Adult Institutions), and (6) K. Armstrong (Correctional Officer). See id. at 1, 5-7. All currently named defendants, except Defendant Gipson, are alleged to be current or former prison officials at the California Medical Facility. See id. Defendant Gipson is alleged

1

to be the current or former Director of Adult Institutions for the California Department of Corrections and Rehabilitation (CDCR). See id.

Plaintiff asserts that on November 5, 2020, Plaintiff was wrongfully removed from the Out-Patient-Housing Unit (OHU) into Add/Seg [Administrative Segregation]. See id. at 6. Plaintiff is 90% confined to his bed due to severe pain and was placed as a "permanent OHU" patient due to his medical needs. See id. Plaintiff claims that he is danger of harm due to his severe medical conditions and is therefore unable to function in the normal general population setting. See id. at 8. Plaintiff has filed multiple inmate grievances and reasonable accommodation requests explaining his medical needs. See id. Plaintiff asserts that he is unable to defend or protect himself from being attacked by younger prison inmates. See id. According to Plaintiff, since arrival at J-1 Wing, active gang members have been transferred to the SNY [sensitive needs yard]. Plaintiff contends that the admittance of active gang inmates has put a green light for SNY inmates to be severely assaulted or killed. See id. at 9. Plaintiff claims that Defendant Gipson knows SNY inmates need to be held separately from active gang inmates because SNY inmates are considered rats, rapists, or child molesters and are to be assaulted on sight by gang members. See id.

According to Plaintiff, Defendant Gipson distributed a letter onto inmate tablets stating in part: "unfortunately, integration 'HAS NOT BEEN SUCCESSFUL FOR ALL GROUPS.' Id. at 9. While CDCR fully believes a person's behavior should determine where they are housed, we also recognize the integration was not working for some people. The department has developed a plan to allow the maximum number of people to the program peacefully without threat of violence." Id. Plaintiff contends that Defendants know that inmates are in danger of being assaulted, that Defendants encourage fights to take place, and that fights are ultimately being allowed by Defendant Gipson through her subordinates who set up the attacks. See id.

Plaintiff further asserts that, on August 18, 2022, Plaintiff was standing in line to receive insulin at the regular time when inmates were informed that three active gang inmates would be brought in based on orders given by Defendant Denberg. See id. at 10. Plaintiff alleges that he complained to Denberg regarding the dangerous position the inmates would be put in due

2

to the active gang inmates being escorted in at the time inmates with medical conditions received their medication. See id. Plaintiff asserts that Defendants Kinross and Kong also had knowledge that these inmates would attack someone, so they walked in front of the active inmates to avoid getting hurt. See id.

According to Plaintiff, when the active gang inmates entered, I/M #1 dropped his bed roll and began attacking Plaintiff. See id. at 10. Plaintiff then threw punches back and I/M #1 fell to the ground on his stomach. See id. Plaintiff asserts the correctional officers restrained I/M #1 and the other two active inmates, while directing all inmates to get on the floor. See id. Plaintiff asserts that Defendants Kong and Kinross, who were escorting I/M #1, did nothing to stop the assault against Plaintiff. See id. According to Plaintiff, due to his mobility impairments, Plaintiff is exempt from getting on the ground and is instead required to sit in his wheel-walker. See id. at 12. Plaintiff asserts that, as he was beginning to sit down on the ground, I/M #2 jumped up, ran over to Plaintiff, and kicked Plaintiff in the face. See id. According to Plaintiff, Defendants Armstrong, Kinross, Kong, Silva, and Denberg failed to protect Plaintiff from harm, and instead stood back and allowed the attack to happen. See id. Plaintiff asserts that Defendants had knowledge of the likelihood that active gang inmates would attempt to assault vulnerable inmates. See id. Plaintiff's jaw was broken in two places due to this assault. Plaintiff was then taken to medical triage area and later received surgery for his broken jawbone. See id. at 12-13.

Plaintiff asserts that his injury was a result of two deliberate acts. First, Defendant Gipson's order directing active and SNY inmates together regardless of the high risk of harm. See id. at 13. Second, the failure of prison staff to protect SNY inmates from being harmed by active inmates. See id.

Next, Plaintiff asserts Defendants violated Plaintiff's Fourteenth Amendment rights to due process and equal protection. See id. at 17. Plaintiff asserts that Defendants falsified State documents and allowed Plaintiff to be assaulted by two different active gang inmates at separate times. See id. According to Plaintiff, Defendants created the situation, failed to protect Plaintiff, participated in causing Plaintiff real harm, and knowingly violated Plaintiff's Fourteenth Amendment rights. See id.

According to Plaintiff, on September 1, 2022, Plaintiff filed a 602 [inmate grievance] regarding the incident in which his jaw was broken and the events previously discussed. See id. at 13. Plaintiff received a decision back and a was assigned a third-level remedies compliance coordinator. See id. Plaintiff asserts that he then sent the third-level remedies out six days after he received it. See id. Plaintiff asserts that he was deliberately screened out of his third-level remedy in an effort to void his grievance. See id.

Plaintiff alleges that he made multiple requests for a copy of the incident report from August 18, 2022, but officers have refused to give Plaintiff a copy. See id. Plaintiff subsequently filed a 602-grievance requesting a copy of the incident report. Plaintiff received an Office of Grievance Decision stating that the matter would be solved internally by staff on March 14, 2023. See id. Plaintiff asserts that upon reading this decision, Plaintiff found that Defendants falsified the incident to cover up their actions. See id. at 14. According to Plaintiff, the report stated that Plaintiff was jumped by I/M #1 and I/M #2, and that officers attempted spray all inmates. See id. Plaintiff asserts that what Defendants claimed was false and Defendants were attempting to cover up their actions. See id.

Plaintiff then filed another inmate grievance on March 15, 2023, for falsification of state documents and a request for a polygraph test given per the Department Operational Manual. See id. at 15. Plaintiff later spoke to an Internal Affairs lieutenant, and they discussed the falsification of incident report. See id. The lieutenant informed Plaintiff that he was investigating and would update Plaintiff on the outcome. See id. After waiting for the outcome until May 2023, Plaintiff submitted three letters to Internal Affairs, the Attorney General's Office, and the Director of Correction to allege that the incident was being swept under the rug. See id. Plaintiff received a response only from the Attorney General's Office, stating it may be best to contact the Inspector General's Office. See id.

Plaintiff then received a letter from D. Cueva, claiming "the investigation or inquiry failed to disclose a preponderance of evidence to prove or disprove the allegations made in the complaint." Id. Although Plaintiff received this letter on May 30, 2023, Plaintiff asserts that his 602-grievance still had not been returned. See id. Plaintiff asserts that in June 2023, Captain

Stevens informed Plaintiff that they were still investigating the 602-grievance for falsification of State documents. However, Plaintiff believes that they never intended to return his 602-grievance and instead have disregarded it entirely. See id. at 16.

**B.     Procedural History**

On June 6, 2024, the Court issued an order and findings and recommendations addressing the sufficiency of Plaintiff's first amended complaint. See ECF No. 12. The Court found some claims cognizable and others not cognizable, as follows:

> The Court finds that Plaintiff's first amended complaint states a cognizable Eighth Amendment safety claim against Defendant Gipson arising from the placement of active gang members on the sensitive needs yard starting in November 2020. The first amended complaint also stated cognizable Eighth Amendment safety claims against Defendants Denberg, Armstrong, Kinross, Kong, and Silva arising from the assault occurring on August 18, 2022. By separate order, the Court will direct service of the first amended complaint as to these claims and defendants.
>
> Plaintiff's due process claim relating to his inmate grievances, however, fails for two primary reasons. First, Plaintiff cannot sustain a stand-alone claim based on handling of his inmate grievances and Plaintiff has not alleged that the handling of his inmate grievances resulted in a denial of access to the courts. Second, Plaintiff has not alleged facts to link any named defendant to a violation of Plaintiff's rights relative to the handling of his inmate grievances. Plaintiff has previously been advised of these defects and it does not appear that further leave to amend would be fruitful.

Id. at 5-6.

The Court recommended that the action proceed on Plaintiff's Eighth Amendment safety claims against all defendants named in the first amended complaint, and that all other claims be dismissed for failure to state a claim. See id. at 8. Service was ordered and Defendants waived service on July 30, 2024. See ECF No. 17.

## II.  DISCUSSION

The legal principles applicable to requests for injunctive relief, such as a temporary restraining order or preliminary injunction, are well established. To prevail, the moving party must show that irreparable injury is likely in the absence of an injunction. See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing Winter v. Natural Res.

1  Def. Council, Inc., 129 S.Ct. 365 (2008)).  To the extent prior Ninth Circuit cases suggest a lesser
2  standard by focusing solely on the possibility of irreparable harm, such cases are "no longer
3  controlling, or even viable."  Am. Trucking Ass'ns, Inc. v. City of Los Angeles, 559 F.3d 1046,
4  1052 (9th Cir. 2009).  Under Winter, the proper test requires a party to demonstrate: (1) he is
5  likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of an
6  injunction; (3) the balance of hardships tips in his favor; and (4) an injunction is in the public
7  interest.  See Stormans, 586 F.3d at 1127 (citing Winter, 129 S.Ct. at 374).  The court cannot,
8  however, issue an order against individuals who are not parties to the action.  See Zenith Radio
9  Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 112 (1969).  Moreover, if an inmate is seeking
10 injunctive relief with respect to conditions of confinement, the prisoner's transfer to another
11 prison renders the request for injunctive relief moot, unless there is some evidence of an
12 expectation of being transferred back.  See Prieser v. Newkirk, 422 U.S. 395, 402-03 (1975);
13 Johnson v. Moore, 948 F.3d 517, 519 (9th Cir. 1991) (per curiam).
14         In his motion for injunctive relief, Plaintiff seeks an order requiring Defendants "to
15 provide a safe environment so that plaintiff will not be subjected to cruel and unusual
16 punishment, assaulted, injured, by knowingly bringing Active inmates into this or any other
17 California Department of Corrections Prisons where SNY, P.C. and Programming Inmates are
18 made subject to brutal assaults due to their. . . Prison Placement SNY."  ECF No. 2, pg. 2.
19 Plaintiff also seeks an order directing Defendants to "cease and desist their deliberate actions of
20 setting up inmates to be attacked, assaulted, stabbed, injured, harmed, or even killed due to their
21 deliberate acts of bringing Active Inmates into this Prison and all SNY and NDPF-non
22 Designated Program Facilities and placing my life and safety as well as thousands of other
23 inmates lifes [sic] in danger of being severely harmed."  Id.
24         The Court finds that injunctive relief is not warranted.  While the Court has
25 determined that this case presents potentially cognizable Eighth Amendment safety claims,
26 Plaintiff has not established that he is likely to succeed on the merits of those claims.  Moreover,
27 Plaintiff has not demonstrated that he is likely to suffer irreparable harm in the absence of this
28 Court's intervention.  Specifically, the Court finds that Plaintiff's fears of injury are, at best,

1 speculative in that he complains of injury that may occur in the future and not of injury that will
2 likely occur absent an injunction.  In this regard, the Court observes that Plaintiff's claims revolve
3 around the notion that inmates are subject to danger when prison officials allow "active inmates"
4 to be on the same yard as sensitive needs inmates.  Thus, any possible harm is further attenuated
5 in that it would only result based on possible conduct of other inmates and, even then, only if
6 certain groups of inmates are placed together on the same prison yard.  Again, there is no
7 evidence to establish for purposes of the pending motion that Plaintiff, who is a sensitive needs
8 inmate, is actually and currently on the same yard as "active inmates," a term which itself is not
9 adequately defined.

### III.  CONCLUSION

Based on the foregoing, the undersigned recommends that Plaintiff's motion for injunctive relief, ECF No. 2, be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  August 5, 2024

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE