**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WILLIAM PATRICK GARCIA,<br>Plaintiff,<br>v.<br>B. DENBERG, et al.,<br>Defendants. | No. 2:23-cv-02098-DC-ICD<br><br><u>ORDER AND</u><br><u>FINDINGS AND RECOMMENDATIONS</u> |

Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, brings this civil rights action under 42 U.S.C. § 1983. The action proceeds on Plaintiff's Eighth Amendment safety claims against Defendants Gipson, Denberg, Kong, Kinross, Armstrong, and Silva. ECF Nos. 12, 19. Pending before the Court are: (1) Plaintiff's motion to compel discovery and for sanctions, ECF No. 31; (2) Defendants' motion to extend the fact-discovery, motion-to-compel, and dispositive-motion deadlines, ECF No. 32; (3) Defendants' motion for summary judgment, ECF No. 35; (4) Plaintiff's motion for an extension of time to oppose the motion for summary judgment, ECF No. 36; and (5) Defendants' motion for an extension of time to file a reply in support of the motion for summary judgment, ECF No. 39. The motions were briefed under Local Rule 230(l) and are submitted on their papers. The matter is before the undersigned pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302(c)(17) and was reassigned to the undersigned on September 11, 2026. ECF No. 42.

The Court resolves the discovery and scheduling motions by order and addresses the motion for summary judgment by findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(A)-(B). Because Plaintiff's motion to compel was filed before the motion for summary judgment, and Plaintiff contends that the discovery it seeks bears on his opposition, the Court resolves the

motion to compel first. *See Garrett v. City & Cnty. of San Francisco*, 818 F.2d 1515, 1519 (9th Cir. 1987).

## I. BACKGROUND

Plaintiff initiated this action in September 2023, and filed the operative first amended complaint in April 2024. ECF Nos. 1, 11. Following screening, the Court ordered the action to proceed on Plaintiff's Eighth Amendment safety claims against Defendants Gipson, Denberg, Kong, Kinross, Armstrong, and Silva, and dismissed all other claims. ECF Nos. 12, 19. Defendants answered. ECF No. 20. The Court then granted Defendants' motion to opt out of the post-screening ADR project and issued a discovery and scheduling order setting August 8, 2025, as the discovery cut-off and requiring pre-trial motions to be filed within 120 days thereafter. ECF Nos. 27-29.

On July 31, 2025, Plaintiff filed the pending motion to compel and for sanctions. ECF No. 31. Defendants opposed, ECF No. 33, and Plaintiff replied, ECF No. 34. On August 6, 2025, Defendants moved to extend the discovery and dispositive-motion deadlines. ECF No. 32. Plaintiff did not respond to that motion.

On December 5, 2025, Defendants moved for summary judgment, ECF No. 35, and served Plaintiff with the notice required by *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (*en banc*), ECF No. 35-10. Plaintiff moved for a 30-day extension of time to file his opposition, ECF No. 36, and Defendants did not oppose the request, ECF No. 37. Plaintiff filed his opposition on January 23, 2026. ECF No. 38. Defendants moved for additional time to file a reply, ECF No. 39, filed their reply on March 4, 2026, ECF No. 40, and later filed a notice of errata, ECF No. 41.

## II. MOTIONS FOR EXTENSIONS OF TIME

When an act must be done within a specified time, the Court may, for good cause, extend the time if a request is made before the original time expires. Fed. R. Civ. P. 6(b)(1)(A). Rule 6(b) "[is] to be liberally construed to effectuate the general purpose of seeing that cases are tried on the merits." *Ahanchian v. Xenon Pictures, Inc.*, 624 F.3d 1253, 1258-59 (9th Cir. 2010) (alteration in original) (quoting *Rodgers v. Watt*, 722 F.2d 456, 459 (9th Cir. 1983)).

///

**A. Plaintiff's Motion for Additional Time to Oppose (ECF No. 36)**

Under Local Rule 230(l), Plaintiff's opposition was due 21 days after service of the motion, plus three days because Defendants served the motion by mail. *See* Fed. R. Civ. P. 6(d); ECF No. 35-11. Before that deadline passed, Plaintiff requested an additional 30 days, explaining that the number of issues raised by the motion required more time to address. ECF No. 36, pp. 1-2. Defendants do not oppose the request. ECF No. 37, p. 2. Good cause appearing, the motion will be granted nunc pro tunc, and Plaintiff's opposition, which was filed within the extended period, is deemed timely.

**B. Defendants' Motion for Additional Time to Reply (ECF No. 39)**

Defendants calculated that their reply was due February 9, 2026, and, before that date, requested an extension to March 11, 2026, citing defense counsel's preplanned vacation, his obligations in other cases, and the need to investigate evidence submitted with Plaintiff's opposition. ECF No. 39, pp. 2-4; ECF No. 39-1, p. 2. Good cause appearing, the motion will be granted nunc pro tunc, and Defendants' reply, filed March 4, 2026, is deemed timely.

**C. Defendants' Motion to Extend Discovery and Dispositive-Motion Deadlines (ECF No. 32)**

Two days before the discovery cut-off, Defendants asked the Court to extend by 90 days the deadlines to complete fact discovery, file motions to compel, and file dispositive motions. ECF No. 32, pp. 2-4. Defendants explained that Plaintiff's motion to compel was pending, that Plaintiff had not yet responded to Defendants' written discovery, and that newly assigned defense counsel needed time to become familiar with the case. *Id.*; ECF No. 32-1, pp. 2-3. Since then, Defendants have filed no motion to compel, filed their motion for summary judgment within the time allowed by the original scheduling order, and completed briefing on that motion. Plaintiff's motion to compel, for its part, was filed before the original discovery cut-off and is timely without any extension. Because the requested extension would serve no further purpose, Defendants' motion will be denied as moot. Discovery remains closed except as necessary to comply with this order.

///

## III. MOTION TO COMPEL (ECF No. 31)

### A. Background

Plaintiff served requests for admission on Defendants Denberg, Gipson, and Kong, and requests for production of documents on Defendant Denberg. ECF No. 31, pp. 6-24. Defendants served responses on February 13, 2025. *Id.* at 35-116. Plaintiff's motion and defense counsel's June 11, 2025, meet-and-confer letter identify the responses Plaintiff challenges: Denberg's responses to requests for admission 1-3 and 10-19; Gipson's responses to requests for admission 1-4 and 6-10; Kong's responses to requests for admission 2-8, 11-13, and 15-25; and Denberg's responses to requests for production 1-4, 6-8, 10-11, and 13-19. *Id.* at 2-3, 155-56. Defendants stood on their responses, except that Denberg served a supplemental response to request for production 11. *Id.* at 156-57.

Plaintiff contends that Defendants' responses are evasive, that "Denied" is not a proper response to a request for admission, that Defendants' generic objections are inadequate, and that Denberg has access to the documents Plaintiff requested. ECF No. 31, pp. 1-5; ECF No. 34, pp. 1-14. He asks the Court to compel further responses and to award sanctions, including fees of $122 per hour for the time he spent preparing the motion. ECF No. 31, pp. 4-5. Defendants respond that Plaintiff's motion does not identify the requests at issue or explain why the responses are deficient, that a denial is a sufficient response to a request for admission, that their objections to the requests for production are well taken, and that sanctions are unwarranted. ECF No. 33.

### B. Legal Standards

The purpose of discovery is to "remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *United States ex re. O'Connell v. Chapman Uni*versity, 245 F.R.D. 646, 648 (C.D. Cal. 2007) (quotation and citation omitted). Rule 26(b)(1) of the Federal Rules of Civil Procedure offers guidance on the scope of discovery permitted:

> Parties may obtain discovery regarding any nonprivileged information that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

> burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Under Rule 37 of the Federal Rules of Civil Procedure, "a party seeking discovery may move for an order compelling an answer, designation, production, or inspection." Fed. R. Civ. P. 37(a)(3)(B). The court may order a party to provide further responses to an "evasive or incomplete disclosure, answer, or response." Fed. R. Civ. P. 37(a)(4). "District courts have 'broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16.'" *Hunt v. Cnty. of Orange*, 672 F.3d 606, 616 (9th Cir. 2012) (quoting *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011)).

Under Rule 37, the party moving to compel bears the burden of informing the court (1) which discovery requests are the subject of the motion to compel, (2) which of the responses are disputed, (3) why the party believes the response is deficient, (4) why any objections are not justified, and (5) why the information sought through discovery is relevant to the prosecution of this action. *McCoy v. Ramirez*, No. 1:13-cv-1808-MJS (PC), 2016 WL 3196738, at *1 (E.D. Cal. June 9, 2016). Rule 37 also requires the moving party to meet and confer with the opposing party. *See* Fed. R. Civ. P. 37(a)(1).

"Relevance for purposes of discovery is defined very broadly." *Garneau v. City of Seattle*, 147 F.3d 802, 812 (9th Cir. 1998). "The party seeking to compel discovery has the burden of establishing that its request satisfies the relevancy requirements of Rule 26(b)(1). Thereafter, the party opposing discovery has the burden of showing that the discovery should be prohibited, and the burden of clarifying, explaining or supporting its objections." *Bryant v. Ochoa*, No. 07cv200 JM (PCL), 2009 WL 1390794, at *1 (S.D. Cal. May 14, 2009) (internal citation omitted). A party resisting discovery bears the burden of showing why it should not be allowed. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Objections to requests for production must be stated with specificity and must state whether responsive materials are being withheld on the basis of the objection. Fed. R. Civ. P. 34(b)(2)(B)–(C).

A party may serve requests to admit the truth of matters within the scope of Rule 26(b)(1) relating to facts, the application of law to fact, or opinions about either. Fed. R. Civ. P. 36(a)(1)(A). If a matter is not admitted, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it," and a denial "must fairly respond to the substance of the matter." Fed. R. Civ. P. 36(a)(4). On finding that an answer does not comply with Rule 36, the Court may order either that the matter is admitted or that an amended answer be served. Fed. R. Civ. P. 36(a)(6); *see Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1245-47 (9th Cir. 1981). Requests for admission are designed to narrow the issues for trial by establishing facts that are not genuinely disputed, *see Asea,* 669 F.2d at 1245. If a party denies a matter that the requesting party later proves, the remedy is an award of the reasonable expenses incurred in making that proof. Fed. R. Civ. P. 37(c)(2).

Local Rule 251 does not apply in this case. *See* ECF No. 33, p. 4. Plaintiff's motion identifies by number the requests at issue and attaches the requests, the responses, and the parties' meet-and-confer correspondence, and defense counsel's June 11, 2025, letter confirms which responses are in dispute. ECF No. 31, pp. 2-3, 6-30, 35-158; *see also* ECF No. 33, p. 4 n.1 (relying on Plaintiff's meet-and-confer letter to identify the responses at issue). Although the motion does not explain the deficiency in each response individually, construing Plaintiff's *pro se* filing liberally, the Court declines to deny the motion for lack of specificity and addresses the disputed responses on their merits. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**C. Requests for Admission**

Each of the challenged responses asserts objections and then, "[s]ubject to and without waiving" those objections, answers "Denied." ECF No. 33, pp. 4-22. Plaintiff's principal complaint is that a bare denial is evasive. It is not. Rule 36 requires a responding party that does not admit a matter to "specifically deny it," Fed. R. Civ. P. 36(a)(4), and a specific denial is what Defendants provided. Plaintiff's remaining arguments (for example, that Gipson's memoranda, including her March 29, 2023, letter, show she knew inmates were being assaulted, and that Kong knows what an active gang member is because he has written reports of their assaults on sensitive needs inmates) are disagreements about the facts. *See* ECF No. 31, pp. 3, 156; ECF No. 34, pp. 5,

8-9. Those disagreements are for the trier of fact. A motion under Rule 36(a)(6) tests whether a response complies with the rule, not whether a denial is correct. Because Defendants answered the requests notwithstanding their objections, the Court need not address the objections except as discussed below.

One response stands on a different footing. Plaintiff's request for admission 19 asks Denberg to "admit that my jaw was broken in two places." ECF No. 33, p. 9. Denberg objected that the phrase "broken in two places" was vague and that the request called for speculation and potentially an expert medical opinion, and then denied it. *Id.* The objections are not well taken. Rule 36 reaches facts and opinions about facts, Fed. R. Civ. P. 36(a)(1)(A), and the phrase is not difficult to understand. More to the point, the incident report narrative Denberg authored the day after the incident states that CMF medical staff reported "two fractures to his jaw bone," ECF No. 35-3, p. 8, and Denberg's summary judgment declaration states that Plaintiff "suffered fractures to his jaw bone as a result of the inmates' attacks," *id.* at 3. An unqualified denial of a fact recorded in the responding party's own report does not "fairly respond to the substance of the matter," Fed. R. Civ. P. 36(a)(4), and suggests that the reasonable inquiry the rule requires was not made. *See Asea*, 669 F.2d at 1245-47. Denberg will be ordered to serve an amended response to request for admission 19. The motion is otherwise denied as to the requests for admission.

### D. Requests for Production to Defendant Denberg

#### 1. <u>Requests for Which No Responsive Documents Exist or Production Has Been Made (Nos. 6, 8, 10, 11, and 18)</u>

As to requests 6, 10, and 18, Denberg represents that, after a reasonable and diligent search, he located no responsive documents. ECF No. 33, pp. 28-31, 35; ECF No. 31, p. 157. In response to request 8, he produced the regulations governing sensitive needs designations. *Id.* at 30. In response to request 11, which sought radio logs and transmissions concerning the incident, Denberg explained that the radio system does not record transmissions, produced the incident report reflecting Officer Williams's radio call, and, after Plaintiff clarified the request, served a supplemental response stating that the J-1 logbook contains no entry depicting the incident. *Id.* at 31; ECF No. 31, p. 157. A party cannot be compelled to produce documents that do not exist, and

Plaintiff offers nothing beyond his belief that additional documents must exist to call these responses into question. The motion is denied as to requests 6, 8, 10, 11, and 18.

2. Requests for Statewide or Long-Term Records (Nos. 1, 2, 3, 15, 17, and 19)

Requests 1, 3, 15, 17, and 19 seek, respectively, every incident report of an inmate-on-inmate assault at CMF since integration began; every incident report from every NDPF in the state depicting assaults between active and sensitive needs inmates; every document concerning any inspection, inquiry, or complaint about safety conditions at CMF since integration began, including all inmate grievances; every document referring to assaults on protective custody inmates by active inmates from 1980 through 2024; and all documents concerning inmates who assaulted others and were sent to or housed at an NDPF. ECF No. 31, pp. 8-10. Denberg objected that the requests are overbroad and unduly burdensome, explaining that responsive records are not indexed in a way that permits them to be located without reviewing thousands of incident reports and grievances from multiple institutions over several years, that records created before 2020 cannot be retrieved, and that the requests seek confidential information about large numbers of non-party inmates. ECF No. 33, pp. 23-27, 33-36.

These requests, as framed, are not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). They reach far beyond the claim against Denberg, a correctional lieutenant at CMF, *see* ECF No. 35-3, p. 2, and to the extent they seek evidence of Defendant Gipson's knowledge, they were not served on Gipson and seek statewide records that Plaintiff has not shown to be within Denberg's possession, custody, or control. *See In re Citric Acid Litig.*, 191 F.3d 1090, 1107 (9th Cir. 1999) (control is the legal right to obtain documents on demand). Plaintiff made no effort to narrow them. To the extent the requests encompass material relevant to the claim against Denberg (his own experience with assaults by newly arriving inmates at CMF) that material is addressed below in connection with request 4. The motion is denied as to requests 1, 3, 15, 17, and 19.

Request 2 seeks all documents created by Gipson concerning the "inter-mixing" of active gang members and sensitive needs inmates. ECF No. 31, p. 8. Denberg responded that Gipson's documents are not within his possession, custody, or control, ECF No. 33, pp. 24-25, and defense counsel offered to permit Plaintiff to serve the request on Gipson after the deadline for serving

written discovery had passed, ECF No. 31, p. 157. Plaintiff has not shown that Denberg has the legal right to obtain Gipson's documents on demand. *See Citric Acid*, 191 F.3d at 1107. In any event, the memoranda describing implementation of the NDPF program, and the March 29, 2023, letter on which Plaintiff relies, are now part of the record as exhibits to Gipson's declaration. ECF No. 35-5, pp. 12-27. The motion is denied as to request 2.

3. Request for Training Materials (No. 7)

Request 7 seeks all documents used to train correctional officers in the separation and control of active gang members and sensitive needs inmates. ECF No. 31, p. 9. Plaintiff asserts no claim based on inadequate training, and he does not explain how training materials would bear on the disputed facts. However, the question in this case is what each Defendant knew and did on August 18, 2022. To the extent that these training documents bear on the context of their actions, they are relevant to Plaintiff's claims. The motion is granted as to request 7 regarding training materials in effect on or before August 18, 2022.

4. Request for Incident Reports Involving Denberg (No. 4)

Request 4 seeks all incident reports Denberg authored or observed in which he escorted or helped escort "active" inmates from Receiving and Release ("R&R") and an assault or fight took place. ECF No. 31, p. 8. Denberg objected that the request is vague and overbroad, that no search can identify reports by those criteria without reviewing thousands of use-of-force reports, that records created before January 1, 2020, cannot be retrieved, and that the request seeks confidential information. ECF No. 33, pp. 27-28. He produced nothing. *Id.* He also objected that Plaintiff's claim against him "only concerns Defendant's alleged conduct on August 18, 2022." *Id.*

That objection takes too narrow a view of relevance. The Eighth Amendment claim against Denberg turns on what he knew, and what he knew on August 18, 2022, depends in part on his experience before that date. Defendants have put that experience directly at issue. In support of summary judgment, Denberg declares that he had "assisted and witnessed inmates moving into the J-1 housing unit numerous times without incident," ECF No. 35-3, p. 3, and Defendants rely on that experience to argue that they had no reason to anticipate an attack during

what they describe as a routine transfer, ECF No. 35, pp. 16, 18; ECF No. 35-1, p. 11. Plaintiff, for his part, declares that he has witnessed at least fifteen assaults on sensitive needs inmates by active inmates at CMF, some during escorts in which Denberg and other Defendants participated. ECF No. 38, pp. 18, 41. Reports of comparable incidents in which Denberg was involved are relevant to the claim and to Defendants' defense. Fed. R. Civ. P. 26(b)(1).

As framed, however, the request is unlimited in time and turns on undefined terms. The Court will narrow it to incident reports for incidents at CMF between November 1, 2020—the screening order describes the claim against Gipson as arising from the placement of active gang members on the sensitive needs yard "starting in November 2020," ECF No. 35, p. 7 (quoting ECF No. 12)—and August 18, 2022, for which Denberg authored or reviewed a staff narrative, and which document a battery or assault by an inmate on another inmate in a CMF housing unit on the day the assailant was escorted to that unit from R&R. Denberg's burden objection rests on the absence of a search function keyed to escorts; limiting the request to reports he authored or reviewed addresses that concern. If, after a reasonable search, Denberg cannot identify responsive reports without a manual review so extensive as to be unduly burdensome, he shall instead serve a declaration from the person who conducted the search describing the search performed, the records and systems searched, and the burden of any further search.

Denberg may redact the names, CDCR numbers, and other identifying information of non-party inmates. Any document withheld as a whole or in part based on privilege shall be identified in a privilege log. Fed. R. Civ. P. 26(b)(5)(A). California regulations governing the confidentiality of prison records do not themselves create a privilege in this federal question case. *See* Fed. R. Evid. 501; *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 197-98 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976); *Kelly v. City of San Jose*, 114 F.R.D. 653, 655-56 (N.D. Cal. 1987). To the extent Denberg invokes the federal official information privilege, he must support it with a declaration that satisfies the requirements of *Kelly*, 114 F.R.D. at 669-70, and must lodge the withheld material with the Court for in camera review.

5. Request for Inmate Rivera's Medical Report of Injury (No. 13)

Request 13 seeks the CDCR Form 7219 (Medical Report of Injury or Unusual Occurrence) completed for inmate Rivera after the August 18, 2022, incident, which Plaintiff states was not included in the incident report package he received. ECF No. 31, p. 9. Denberg refused to produce it, citing state regulations governing the confidentiality of inmate case and health records and the Health Insurance Portability and Accountability Act ("HIPAA"). ECF No. 33, p. 32. The document is relevant. The parties' accounts of the incident diverge sharply on whether Rivera and Felix both struck Plaintiff in the face and whether Defendant Kong sprayed them with pepper spray as they continued the attack. *Compare* ECF No. 35-1, pp. 9-10 (Defendants' Undisputed Facts 37-41), *with* ECF No. 38, pp. 34-35. A nurse's injury survey of one of the two alleged assailants, completed shortly after the incident, bears on both questions. Plaintiff already has the forms completed for himself and for Felix, ECF No. 38, pp. 51, 53, and Defendants have themselves disclosed, in the incident report, that Rivera's form "indicates O.C. exposure to his face and neck area," ECF No. 35-3, p. 9. The incident package Plaintiff received contains a cover sheet for Rivera's form, which lists Denberg as the staff member who prepared that entry, followed by a form completed for a different inmate. ECF No. 38, pp. 54-55.

Rivera's privacy interest is real but limited, and it can be protected through redaction and restriction on use. Neither the state regulations Denberg cites (nor HIPAA) bars production in response to a court order. *See Kerr*, 511 F.2d at 197-98; 45 C.F.R. § 164.512(e)(1)(i). Denberg will be ordered to produce the form, redacted of medical information unrelated to the injuries and chemical-agent exposure observed on August 18, 2022, and of personal identifiers other than Rivera's name and CDCR number.

6. <u>Request for Denberg's Disciplinary History (No. 14)</u>

Request 14 seeks all documents concerning Denberg's disciplinary history as a CDCR employee. ECF No. 31, pp. 9-10. Denberg objected based on the official information privilege and California Penal Code §§ 832.7 and 832.8, and as overbroad, and produced nothing. ECF No. 33, pp. 32-33. As written, the request is overbroad; it reaches every disciplinary matter over Denberg's career, regardless of subject. But complaints and findings that Denberg failed to protect inmates from assault, or prepared false reports about inmate assaults (the conduct Plaintiff

alleges here) may bear on knowledge, intent, and absence of mistake, *see* Fed. R. Evid. 404(b)(2), and fall within the broad scope of discovery. Denberg's privilege objection is not properly supported. State statutes do not govern privilege in this federal question action, and the official information privilege must be invoked through a declaration from a responsible official, which Denberg has not provided. *See Kerr*, 511 F.2d at 198; *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033-34 (9th Cir. 1990); *Kelly*, 114 F.R.D. at 669-70.

The Court will narrow the request to documents reflecting any complaint, grievance, staff complaint inquiry, internal affairs investigation, or adverse action, from August 18, 2017, through August 18, 2022, alleging that Denberg failed to protect an inmate from assault by another inmate or prepared or approved a false report concerning an inmate assault or use of force, together with documents reflecting the disposition. Any such documents that Denberg contends are privileged shall be identified in a privilege log, supported by a declaration that satisfies *Kelly*, and lodged with the Court for in camera review.

7. Request for All Documents Relating to the Allegations (No. 16)

Request 16 seeks all other documents and statements relating to the allegations in the complaint. ECF No. 31, p. 10. Denberg objected that the request is vague and seeks attorney work product and, subject to those objections, produced the incident report package for the August 18, 2022, incident. ECF No. 33, p. 34. Although the request is broad, its core (documents concerning the incident at the heart of this case) is plainly relevant, and Denberg's response does not state whether any responsive materials are being withheld on the basis of his objections, as Rule 34 requires. Fed. R. Civ. P. 34(b)(2)(C). Denberg will be ordered to serve a supplemental response that so states; to produce any non-privileged documents within his possession, custody, or control concerning Incident Log No. 43687 that have not already been produced; and to identify in a privilege log any responsive documents withheld as privileged, other than communications with defense counsel and counsel's work product created for this litigation.

**E. Sanctions**

Plaintiff seeks sanctions in the form of fees for his time, copying costs, and monetary and nominal damages. ECF No. 31, pp. 1, 4-5. When a motion to compel is granted in part and denied

in part, the Court "may . . . apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). An award is not warranted here. Defendants' positions were substantially justified as to most of the requests at issue, and Plaintiff, who is not an attorney, may not recover attorney's fees for time spent representing himself. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991). Plaintiff's complaints about prior defense counsel's conduct at an earlier settlement conference, ECF No. 31, p. 1, do not bear on the discovery dispute. The request for sanctions is denied.

## IV. MOTION FOR SUMMARY JUDGMENT (ECF No. 35)

Defendants move for summary judgment on the grounds that (1) Gipson did not know Plaintiff would be attacked and the NDPF policy is constitutional, both facially and as applied; (2) Denberg, Kong, Kinross, Armstrong, and Silva (the "custodial Defendants") did not know that Rivera or Felix would attack Plaintiff and could not have prevented an attack that lasted seconds; (3) Plaintiff has no evidence supporting punitive damages; and (4) all Defendants are entitled to qualified immunity. ECF No. 35, pp. 13-18. Plaintiff opposes the motion. ECF No. 38.

### A. The Summary Judgment Record

The following facts are undisputed or, where disputed, are stated in the light most favorable to Plaintiff, the non-moving party.

#### 1. Undisputed Facts

Plaintiff was housed in the J-1 housing unit at the California Medical Facility ("CMF") in Vacaville. ECF No. 35-3, p. 8; ECF No. 38, p. 41. At approximately 5:39 p.m. on August 18, 2022, Defendants Kong and Kinross escorted inmates Rivera and Felix, who were newly arriving at the unit, from R&R to J-1, with assistance from Silva and other officers. ECF No. 35-4, p. 2; ECF No. 35-7, p. 2; ECF No. 35-8, p. 2. Consistent with CDCR policy, neither inmate was restrained during the escort. ECF No. 35-4, p. 2; ECF No. 35-7, p. 2. Plaintiff was standing in the medication line in J-1 when the inmates entered. ECF No. 35-4, p. 2; ECF No. 35-2, pp. 8-9. Plaintiff was attacked and suffered two fractures of his jaw, for which he was taken to an outside hospital and later underwent surgery. ECF No. 35-3, pp. 3, 8; ECF No. 35-2, pp. 12, 15. Plaintiff had never met Rivera or Felix, had no prior problems with them, and had not previously been

assaulted on an NDPF. ECF No. 35-2, pp. 5, 16; ECF No. 38, p. 38. The incident report lists video as not applicable, ECF No. 35-3, p. 9, and no video is in the record.

Defendant Gipson was the Director of CDCR's Division of Adult Institutions at the time. ECF No. 35-5, p. 2. She did not know Plaintiff, was not present during the incident, and had no role in the decision to house Rivera and Felix at CMF. *Id.* at 11; *see* ECF No. 35-2, p. 7.

2. <u>Defendants' Account</u>

According to Defendants, Rivera and Felix entered J-1 and, without warning or provocation, ran up to Plaintiff and began striking him in the face with their fists. ECF No. 35-3, p. 2; ECF No. 35-4, p. 2; ECF No. 35-7, p. 2. Plaintiff fell to the ground. Kong ordered the inmates to get down and, when they continued striking Plaintiff, sprayed each of them in the face with his MK9 pepper spray from about three feet away. ECF No. 35-4, p. 2; ECF No. 35-6, p. 2; ECF No. 35-7, p. 2. Both inmates then went prone, and all force ceased. ECF No. 35-4, p. 2. Officer Williams, who saw "two inmates swinging their fists" through the J-1 window, radioed for a "1 on 1 fight" response and entered to find the involved inmates prone. ECF No. 35-9, p. 2. Silva, who had helped escort the inmates and then remained at the front door, could not see who was involved until he moved to the area and found Rivera and Felix already prone. ECF No. 35-8, p. 2. Defendants' declarations estimate the relevant interval at between 5 and 20 seconds. ECF No. 35-3, p. 3 (no more than 20 seconds from when the inmates broke away from their escorts until they were subdued); ECF No. 35-4, p. 3 (15 to 20 seconds); ECF No. 35-7, p. 3 (approximately 10 seconds); ECF No. 35-6, p. 2 (less than 10 seconds from the order to get down until force ceased); ECF No. 35-8, p. 3 (5 to 10 seconds from hearing the fight until arriving to find the inmates on the ground); ECF No. 35-9, p. 2 (same).

Each custodial Defendant declares that he had no knowledge that Rivera or Felix would attack anyone and that he had assisted or witnessed inmates moving into J-1 numerous times without incident. ECF No. 35-3, pp. 3-4; ECF No. 35-4, p. 3; ECF No. 35-6, p. 2; ECF No. 35-7, p. 3; ECF No. 35-8, p. 3. Denberg's declaration describes the attack in the same terms as the others' but does not state where he was positioned or what he personally observed. ECF No. 35-3, pp. 2-3.

3. Plaintiff's Account

Plaintiff's account comes from his deposition testimony and from his opposition, response to Defendants' statement of undisputed facts, and declaration, each of which is signed under penalty of perjury. ECF No. 35-2; ECF No. 38, pp. 24, 40, 45. According to Plaintiff, while he waited in the medication line for his insulin, Armstrong announced that three inmates—"active" inmates, according to Plaintiff—were being brought in and, when Plaintiff objected, said it was the lieutenant's call. ECF No. 35-2, p. 8; ECF No. 38, pp. 5, 42. Plaintiff responded that this was "crazy" because he had watched other inmates get assaulted. ECF No. 35-2, p. 8; *see* ECF No. 38, p. 42. Plaintiff told Denberg that one of the inmates in line was going to be assaulted, and Denberg told him not to move and to stay in line. ECF No. 38, pp. 5, 42. Denberg then opened the door to let the inmates in. ECF No. 35-2, p. 9; ECF No. 38, p. 42. When the nurse offered Plaintiff his insulin, he declined, telling her he was "probably going to get jumped." ECF No. 35-2, p. 9.

The first inmate entered with Kinross and Kong walking a few feet behind him. ECF No. 35-2, p. 9; ECF No. 38, p. 5. As he passed Plaintiff, the inmate dropped his bedroll and swung at Plaintiff, striking him in the shoulder. Plaintiff punched back, and the inmate dove to the floor on his stomach. ECF No. 35-2, p. 9. The exchange lasted "two to three seconds." *Id.* at 16. Kinross and Kong walked over and handcuffed the first inmate while Armstrong, standing in front of Plaintiff, repeatedly ordered him to get down. *Id.* at 9-10. Plaintiff, who has a mobility impairment and uses a walker, did not immediately comply "[b]ecause there are still active inmates." *Id.* at 10-11; see ECF No. 38, p. 43. The second inmate was sitting on the floor six to fifteen feet away, with Denberg, who carried no pepper spray or baton, standing over him; the third inmate was near the front door with several officers. ECF No. 35-2, p. 10; ECF No. 38, p. 43. Silva walked in and stood next to Armstrong, so that four officers (Armstrong, Silva, Kinross, and Kong) were standing in front of Plaintiff. ECF No. 35-2, pp. 10-11; ECF No. 38, p. 5.

After Armstrong had been yelling at him for "a good minute, minute and a half," Plaintiff concluded that everyone was "covered" and got down into a push-up position. ECF No. 35-2, pp. 11-12, 14; ECF No. 38, p. 5. He then looked back and saw that "Lieutenant Denberg had let

inmate number two stand up, run over towards me. As I turned my head these officers are moving away." ECF No. 35-2, p. 12. The second inmate kicked Plaintiff in the side of the face, fracturing his jaw in two places. *Id.* Plaintiff estimated that two to four seconds passed between when he saw the second inmate standing and the kick. *Id.* at 16. "Everybody though was watching," and no one reacted: "Lieutenant Denberg didn't yell look out to his officers or anything. He just let him stand up and run over." *Id.* When Plaintiff got up to go after the second inmate, Armstrong grabbed him and held him against the wall. *Id.* at 12. Plaintiff testified that no pepper spray was used while he was present. *Id.* at 13; ECF No. 38, pp. 35-36. Plaintiff estimates that the first assault lasted about three seconds, that roughly a minute and a half passed before the second assault, and that the second assault lasted about four seconds. ECF No. 38, pp. 5, 36-37.

Inmate Charles Carter, a porter in the unit, declares under penalty of perjury that he watched one of the new arrivals punch Plaintiff while Armstrong yelled for all inmates to get down, and that "while Mr. Garcia was on the ground, and before the responding officers could restrain all involved inmates in handcuffs, a second new arrival jumped up, ran over and kicked Mr. Garcia in the face," while "all the correctional officers, who were in the immediate area, watched." ECF No. 38, p. 82.

Plaintiff also points to features of Defendants' records that he contends are inconsistent with their account. Williams's radio call reported a "1 on 1 fight," and his report states that he saw "two unidentified Inmates swinging their fists at each other." ECF No. 35-3, p. 14; *see* ECF No. 38, p. 6. And the injury report completed for Plaintiff at 5:46 p.m. records injuries to his lower lip, jaw, and the right side of his face, and no chemical-agent exposure—which, Plaintiff argues, is inconsistent with a sustained beating by two inmates followed by pepper spray at close range. ECF No. 38, pp. 6, 13, 34-36, 51; *see* ECF No. 35-3, p. 9.

4. <u>Evidence Concerning the NDPF Program</u>

Gipson declares that, following a 2016 review of the growth of the sensitive needs population, CDCR began implementing Non-Designated Programming Facilities ("NDPFs") at lower-security institutions for inmates whose case factors reflected positive behavior, in place of separate sensitive needs and general population yards. ECF No. 35-5, pp. 3-5; *see* ECF No. 35-1,

p. 2 (Undisputed Fact 1). Inmates are endorsed to an NDPF through classification committee review that considers, among other things, enemy and Security Threat Group ("STG") concerns, and inmates who engage in STG activity or violence are removed and disciplined. *Id.* at 5-6, 10. During initial implementation, there were instances of violence "most often linked to active gang members who did not want to program on the NDPF"; CDCR revised its integration methods in response (for example, by escorting newly arriving inmates to their housing units individually rather than as a group) and those issues lasted no more than a few months, after which violence significantly declined. *Id.* at 7-9. Gipson acknowledges that "active Security Threat Group affiliates appear to be a nexus to disruptive behaviors within the first hours upon arrival," but states that not all continue in that pattern and that NDPF yards have been "relatively violence-free." *Id.* at 9-10.

On March 29, 2023, Gipson issued a letter to the inmate population explaining that CDCR had begun in 2022 to house incarcerated people based on their case factors and needs rather than their STG affiliation; that integration "has not been successful for all groups" and "was not working for some people"; and that, effective March 17, 2023, CDCR had begun endorsing Level III and IV STG members to three other prisons, while Level II inmates would continue to be endorsed to NDPFs. *Id.* at 10-11, 27.

Plaintiff, who identifies as a sensitive needs inmate, contends that integrating active gang members with sensitive needs inmates is inherently dangerous; that active inmates arriving on an NDPF are pressured to assault a sensitive needs inmate within days of arrival; that he has personally witnessed at least fifteen such assaults at CMF; and that Gipson's letter shows she knew of the violence in 2022 but continued the policy. ECF No. 38, pp. 3-4, 6-7, 13-18, 41. At his deposition, Plaintiff agreed that Gipson did not know him and did not know that he in particular would be assaulted, but testified that "[s]he just knows that an inmate is going to be assaulted." ECF No. 35-2, p. 7. In his opposition, he maintains that Gipson knew that he and other sensitive needs inmates would be assaulted. ECF No. 38, p. 39.

///

///

**B. Legal Standards**

1. Summary Judgment

Summary judgment is appropriate when the moving party shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

If the moving party meets this burden, the burden shifts to the opposing party to establish that a genuine issue of material fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party may not rely on mere allegations or denials in its pleadings but must tender evidence of specific facts showing a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Matsushita*, 475 U.S. at 586 n.11. A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits. Fed. R. Civ. P. 56(c). The court must believe the nonmoving party's evidence and draw all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255. However, inferences must rest on a factual predicate; they cannot be drawn out of thin air. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985).

Where the nonmoving party is a pro se inmate, the court must consider as evidence all contentions based on personal knowledge that are attested under penalty of perjury. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004). The court must liberally construe the pro se party's filings and avoid a strict application of summary judgment rules. *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

2. Eighth Amendment Safety

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual

punishment. *See Helling v. McKinney*, 509 U.S. 25, 31 (1993); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Conditions of confinement may, however, be harsh and restrictive. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted with deliberate indifference to inmate health or safety. *See Farmer*, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." *See id.*

Under these principles, prison officials have a duty to take reasonable steps to protect inmates from safety risks. *See Hoptowit v. Ray*, 682 F.2d 1237, 1250-51 (9th Cir. 1982), abrogated on other grounds by *Sandin v. Conner*, 515 U.S. 472 (1995); *Farmer*, 511 U.S. at 833. Liability exists only when two requirements are met: (1) objectively, the prisoner was incarcerated under conditions presenting a substantial risk of serious harm; and (2) subjectively, prison officials knew of and disregarded the risk. *See Farmer*, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. *See Farmer*, 511 U.S. at 844. The knowledge element does not require that the plaintiff prove that prison officials know for a certainty that the inmate's safety is in danger, but it requires proof of more than a mere suspicion of danger. *See Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Finally, the plaintiff must show that prison officials disregarded a risk. Thus, where prison officials actually knew of a substantial risk, they are not liable if they took reasonable steps to respond to the risk, even if harm ultimately was not averted. *See Farmer*, 511 U.S. at 844.

3. <u>Supervisory Liability</u>

Supervisory personnel are generally not liable under § 1983 for the actions of their employees. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (holding that there is no respondeat superior liability under § 1983). A supervisor is only liable for the constitutional violations of subordinates if the supervisor participated in or directed the violations. *See id.* Supervisory personnel who implement a policy so deficient that the policy itself is a repudiation of constitutional rights and the moving force behind a constitutional violation may be liable even where such personnel do not overtly participate in the offensive act. *See Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc), abrogated on other grounds by *Farmer v. Brennan*, 511 U.S. 825 (1994). A supervisory defendant may also be liable where he or she knew of constitutional violations but failed to act to prevent them. *See Taylor*, 880 F.2d at 1045; *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (supervisor may be liable for his own culpable action or inaction in the training, supervision, or control of subordinates, for acquiescence in the constitutional deprivation, or for conduct showing reckless or callous indifference to the rights of others).

The plaintiff must establish a causal link between the supervisory defendant and the claimed constitutional violation. *See Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989); *Starr*, 652 F.3d at 1207. "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

4. <u>Qualified Immunity</u>

Government officials enjoy qualified immunity unless their conduct violates a "clearly established statutory or constitutional right of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To determine whether an official is entitled to qualified immunity, courts engage in a two-prong inquiry: (1) whether the facts, viewed in the light most favorable to the injured party, show the official's conduct violated a constitutional right; and (2) whether that right was clearly

established at the time of the incident. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Courts have discretion to address either prong first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A right is clearly established only if existing precedent has placed the statutory or constitutional question "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). The rule must be "settled law" dictated by controlling authority or a robust consensus of persuasive case law. *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). Courts must define the right in a particularized context rather than at a high level of generality, ensuring the contours are clear enough that a reasonable official would understand that their specific actions violate that right. *Saucier*, 533 U.S. at 201–02; *Kelly v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995). However, officials can still be on notice that their conduct is unlawful even under novel factual circumstances. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

Whether a right was clearly established is a question of law. *Elder v. Holloway*, 510 U.S. 510, 516 (1994). However, whether a violation occurred may turn on disputed facts. At the summary judgment stage, the court must view the evidence and resolve all material factual disputes in the light most favorable to the plaintiff. *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003).

**C. Discussion**

1. <u>Plaintiff's Evidence</u>

Plaintiff's deposition testimony is competent evidence. Because his opposition, response to Defendants' statement of undisputed facts, and declaration are signed under penalty of perjury, the Court also considers them as evidence to the extent they set forth facts within Plaintiff's personal knowledge that would be admissible at trial. *Jones v. Blanas*, 393 F.3d at 923. The same is true of Carter's declaration, which is signed under penalty of perjury and recounts what Carter saw. ECF No. 38, p. 82. The Court does not treat Plaintiff's speculation about Defendants' motives, or his generalized assertions about violence throughout CDCR, as evidence of the facts asserted.

Defendants argue that self-serving statements unsupported by other evidence cannot create a genuine dispute. ECF No. 35, p. 12. A declaration is not disqualified merely because it is

self-serving or uncorroborated, however. A court may disregard a self-serving declaration that states only conclusions rather than facts that would be admissible in evidence, but a declaration that sets out specific facts within the declarant's personal knowledge can create a genuine dispute. *See Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497-98 (9th Cir. 2015); *SEC v. Phan*, 500 F.3d 895, 909-10 (9th Cir. 2007). Plaintiff's account of what he saw and heard on August 18, 2022, is specific and detailed, and parts of it are corroborated by Carter's declaration and by Defendants' own records.

Defendants also invoke the sham affidavit rule. ECF No. 40, pp. 4-5; ECF No. 40-2, p. 3. A party cannot create an issue of fact with a declaration that contradicts his prior deposition testimony, but the rule applies only if the court determines that the contradiction is actually a sham and the inconsistency is clear and unambiguous. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998-99 (9th Cir. 2009). The only contradiction Defendants identify concerns Plaintiff's deposition testimony about Gipson's knowledge. ECF No. 40, p. 5; ECF No. 40-2, p. 3. The recommendation below as to Gipson takes that testimony as given, and it has no bearing on the claims against the custodial Defendants. Defendants identify no clear and unambiguous contradiction between Plaintiff's deposition and his later sworn statements about the events in J-1, and the Court finds none.

Defendants ask the Court to strike Carter's declaration under Rule 37(c)(1), arguing that Plaintiff knew of the declaration when he responded to their discovery in August 2025 but did not provide it until he filed his opposition, depriving them of the opportunity to conduct further discovery. ECF No. 40-2, p. 4; ECF No. 40-3, p. 2. A party who fails to provide information or identify a witness as required by Rule 26(a) or (e) may not use that information or witness on a motion "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The party facing the sanction bears the burden of showing that its failure was harmless. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106-07 (9th Cir. 2001). Plaintiff, a prisoner proceeding without counsel, was not required to make initial disclosures, Fed. R. Civ. P. 26(a)(1)(B)(iv), and the duty to supplement discovery responses does not extend to information that has "otherwise been made known to the other parties during the discovery process or in

writing," Fed. R. Civ. P. 26(e)(1)(A). Carter's identity and declaration were made known to Defendants in both ways. At his July 30, 2025, deposition, Plaintiff told defense counsel that he had already sent "a one witness declaration from Carter, inmate Carter, Charles Carter." ECF No. 34, p. 34 (Dep. 66:20-22). His August 2025 discovery responses identified Carter as a witness and referred to Carter's declaration. ECF No. 40-3, pp. 6, 8-9, 24. And Plaintiff attached Carter's declaration to his reply in support of the motion to compel, which he served on defense counsel on September 14, 2025, nearly three months before Defendants moved for summary judgment. ECF No. 34, pp. 15, 40. Defendants did not seek to depose Carter, an inmate at CMF, or to reopen discovery for that purpose. Any failure to produce the declaration sooner was harmless, and the request to strike it is denied. Like Plaintiff's declaration, Carter's declaration is signed under penalty of perjury and recounts what Carter saw. ECF No. 38, p. 82.

Defendants also contend that Carter's declaration is internally inconsistent because Carter states both that Armstrong yelled for inmates to get down and that the officers watched the assaults. ECF No. 40, p. 7 n.2. The two statements are not inconsistent; an officer can order inmates to the ground while the officers present do nothing to stop an assault. Nor does Carter say, as Defendants suggest, that the officers responded immediately. *See* ECF No. 38, p. 82. Any tension in Carter's account goes to his credibility, which the Court may not weigh on summary judgment. In any event, the recommendation below would be the same without Carter's declaration, because Plaintiff's own sworn testimony is sufficient to create a genuine dispute. *See Nigro*, 784 F.3d at 497-98.

2. <u>Defendant Gipson</u>

Defendants frame Plaintiff's claim against Gipson as a facial and as-applied challenge to the constitutionality of the NDPF policy. ECF No. 35, pp. 13-15. Plaintiff, however, seeks damages, *see* ECF No. 35, p. 17, so the question is whether the evidence would permit a reasonable jury to hold Gipson individually liable under § 1983. Because Gipson did not participate in the events of August 18, 2022, Plaintiff must show either that she implemented a policy "so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation,'" *Hansen*, 885 F.2d at 646 (quoting *Thompkins v.*

*Belt*, 828 F.2d 298, 304 (5th Cir. 1987)), or that she knew of and acquiesced in constitutional violations by subordinates, *Starr*, 652 F.3d at 1207-08—and, either way, that she acted with the deliberate indifference the Eighth Amendment requires, *see Farmer*, 511 U.S. at 837.

Viewed in Plaintiff's favor, the evidence would permit a finding that Gipson knew integration carried some risk of violence. Her own declaration acknowledges violence during initial implementation linked to active gang members, and that STG affiliates "appear to be a nexus to disruptive behaviors within the first hours upon arrival." ECF No. 35-5, pp. 9-10. That Gipson did not know Plaintiff, or know that he in particular would be attacked, is not dispositive. Deliberate indifference may be found whether a prisoner faces an excessive risk of attack "for reasons personal to him or because all prisoners in his situation face such a risk," and an official may not escape liability by showing that "he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault." Farmer, 511 U.S. at 843.

Awareness of risk is only part of the inquiry, however. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*. at 844. The undisputed evidence shows that the NDPF program was accompanied by measures designed to manage the risk of violence: classification committee review of each inmate's case factors, including enemy and STG concerns, before endorsement to an NDPF; removal and discipline of inmates who engage in violence or STG activity; ongoing review of integration methods, including a change to escorting arriving inmates individually rather than in groups; and, in March 2023, the redirection of Level III and IV STG members away from NDPFs. ECF No. 35-5, pp. 5-11. Plaintiff disputes the effectiveness of those measures, but he offers no evidence—beyond his own opinion and his general statement that he has seen at least fifteen assaults at CMF, for which he gives no dates or details—from which a jury could find that Gipson's response was so inadequate as to amount to deliberate indifference, or that before August 18, 2022, she knew the measures were failing at CMF or at Level II NDPFs generally.

The March 29, 2023, letter does not supply that evidence. It postdates the incident by seven months. Its reference to 2022 describes when CDCR began housing inmates based on case factors rather than gang affiliation, not when integration began producing violence. It concerns Level III and IV STG members, and it states that the integration of Level II inmates would continue. ECF No. 35-5, p. 27. Read in Plaintiff's favor, the letter shows that CDCR identified problems with integrating some groups and changed course in response to the risk.

Plaintiff's evidence also does not connect the NDPF policy, as distinguished from the conduct of staff at CMF, to his injury. On Plaintiff's own account, he was injured because officers at CMF left the second inmate unrestrained, and failed to intervene, after the first inmate attacked. Nothing in the record suggests that the NDPF policy required or authorized that conduct. Indeed, Gipson declares that one of the measures CDCR adopted was to escort newly arriving inmates individually, rather than together, from the bus to their housing unit, ECF No. 35-5, p. 8, whereas Rivera and Felix were escorted together from R&R to J-1, ECF No. 35-4, p. 2. The policy may have been a but-for cause of Rivera's and Felix's presence in J-1, but that does not make the policy itself "the moving force of the constitutional violation" Plaintiff alleges. *Hansen*, 885 F.2d at 646 (internal quotation marks omitted).

Plaintiff contends that the discovery sought in his motion to compel would show what Gipson knew. ECF No. 38, pp. 13-14, 16-17. The Court has resolved the motion to compel first for that reason. *See* Garrett, 818 F.2d at 1519. But the requests Plaintiff identifies were served on Denberg, not Gipson, and those seeking statewide information have been denied for the reasons discussed above. Plaintiff has not submitted a declaration under Rule 56(d) identifying specific facts that further discovery would reveal and explaining how those facts would preclude summary judgment as to Gipson. *See* Fed. R. Civ. P. 56(d); *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008). Evidence that assaults occurred at NDPFs would not, in any event, establish that Gipson's response to the risk was unreasonable, and further discovery would not overcome Gipson's entitlement to qualified immunity, discussed next. *See Jones v. Blanas*, 393 F.3d at 930-31 (summary judgment despite a request for further discovery is appropriate where the discovery would be "fruitless").

Even if the evidence created a triable question as to Gipson's deliberate indifference, she would be entitled to qualified immunity. The relevant question is whether it was clearly established, between November 2020 and August 2022, that a corrections director violates the Eighth Amendment by implementing and continuing an integrated housing program for lower-security inmates (one that includes classification review, removal of violent inmates, and ongoing adjustments to reduce violence) despite knowing that integration had produced some violence. Plaintiff relies principally on out-of-circuit decisions involving officials who failed to keep protective custody inmates away from known threats, failed to follow rules requiring segregated prisoners to be kept apart, or orchestrated attacks. ECF No. 38, pp. 10-12, 15, 17-19, 21-24. None addresses a classification-based integration program, and none is controlling here. The Ninth Circuit has recognized that Farmer did not resolve "at what point a risk of inmate assault becomes sufficiently substantial for Eighth Amendment purposes," and that an official who knows the relevant facts may still reasonably, if mistakenly, perceive the risk as not that high. *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1050-51 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 834 n.3). Plaintiff has not identified, and the Court has not found, authority that would have placed the unconstitutionality of Gipson's conduct "beyond debate." *al-Kidd*, 563 U.S. at 741. Other courts in this circuit have rejected Eighth Amendment challenges to NDPF integration. *See* ECF No. 35, pp. 13-15 (collecting cases).

Summary judgment should be granted as to Defendant Gipson.

3. <u>Defendants Denberg, Kong, Kinross, Armstrong, and Silva</u>

Defendants argue that they are entitled to summary judgment because none of them knew that Rivera or Felix would attack Plaintiff, Plaintiff had never had problems with either inmate, and, in any event, each attack lasted no more than four seconds, leaving them no opportunity to intervene. ECF No. 35, pp. 15-16.

Those arguments rest largely on Defendants' account of a single, simultaneous attack by two inmates that ended within seconds when Kong deployed pepper spray. Defendants' alternative argument, that each attack lasted only seconds even on Plaintiff's account, is addressed below. Plaintiff's sworn testimony, corroborated in part by Carter's declaration,

describes a different event: two separate attacks by two different inmates, separated by roughly a minute and a half, during which the second inmate sat unrestrained on the floor near Plaintiff. Which account is accurate is a question of credibility that the Court may not resolve on summary judgment. *Anderson*, 477 U.S. at 255. Defendants offer no video or other evidence that "blatantly contradict[s]" Plaintiff's version, *Scott v. Harris*, 550 U.S. 372, 380 (2007), and several features of the record are consistent with it: the radio call reported a "1 on 1 fight," and the officer who made it saw two inmates "swinging their fists at each other," ECF No. 35-3, p. 14; Plaintiff's injury report notes no chemical-agent exposure, ECF No. 38, p. 51; and Defendants' own estimates of the duration of the incident vary from 5 to 20 seconds, ECF No. 35-3, p. 3; ECF No. 35-4, p. 3; ECF No. 35-7, p. 3. The Court therefore takes Plaintiff's account as true for purposes of this motion.

On that account, a reasonable jury could find that each of these Defendants knew of and disregarded a substantial risk of serious harm to Plaintiff. By the time the second inmate rose from the floor, Defendants had just watched an inmate who arrived in the same escort attack Plaintiff without provocation. A jury could find that, from that moment, the risk that the remaining unrestrained arrivals would also attack Plaintiff was obvious, and that each Defendant on the scene was aware of it. *See Farmer*, 511 U.S. at 842 ("a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious"). Plaintiff himself refused to get down "[b]ecause there are still active inmates." ECF No. 35-2, p. 10. Yet, on Plaintiff's account, for roughly a minute and a half the second inmate remained unrestrained, seated on the floor a short distance from Plaintiff and watched only by Denberg, who carried no pepper spray or baton; Kong and Kinross, the officers escorting both arrivals, finished handcuffing the first inmate and stood facing Plaintiff; and Armstrong, with Silva beside him, repeatedly ordered Plaintiff, a mobility-impaired inmate who uses a walker, to get down on the floor. When Plaintiff complied, Denberg let the second inmate stand up; the inmate ran at Plaintiff while the four officers in front of Plaintiff moved away; and no one warned Plaintiff, intercepted the inmate, or used force before the kick.

A jury crediting that account could find that each of these Defendants failed to take reasonable measures available to them—restraining or securing the second inmate during the interval, keeping him away from Plaintiff, warning Plaintiff or fellow officers, or stepping in when he charged. *See Farmer*, 511 U.S. at 847; *Cortez v. Skol*, 776 F.3d 1046, 1050-52 (9th Cir. 2015) (reversing summary judgment where the evidence would permit a finding that an officer escorting inmates was deliberately indifferent to the risk that they would attack another inmate in the escort); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (prison official can violate the Eighth Amendment by failing to intervene).

Defendants' argument that the second attack lasted only seconds does not change the analysis. That argument addresses only the final moments of the second inmate's charge, not the interval of more than a minute during which, on Plaintiff's account, the second inmate sat unrestrained a short distance from Plaintiff, whom the other arrival had just attacked. An officer may be liable for failing to intercede when he had a realistic opportunity to do so, see *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000), and whether these Defendants had such an opportunity depends on the disputed sequence of events. Nor does it matter that Plaintiff has not identified a CDCR policy that Defendants violated. *See* ECF No. 35, p. 16. The question under the Eighth Amendment is whether Defendants were deliberately indifferent, not whether they complied with CDCR policy.

In reply, Defendants contend that even on Plaintiff's account they lacked the required knowledge and that one inmate's attack did not mean the other would attack, the second inmate gave no sign of his intentions, and requiring officers to anticipate his attack would demand "superhuman prescience." ECF No. 40, pp. 4, 6-7, 10; *see* ECF No. 40-1, p. 53. Deliberate indifference does not require proof that the assailant announced his intentions. Knowledge of a substantial risk may be shown by circumstantial evidence, including the obviousness of the risk, *Farmer*, 511 U.S. at 842, and a jury could find it here. The second inmate arrived in the same escort as the first, who had just attacked Plaintiff without provocation. On Plaintiff's account, the officers did not treat the second inmate as harmless as Denberg stood over him, "controlling him from moving," while other officers covered the third arrival at the door. ECF No. 38, p. 43; ECF

No. 35-2, pp. 10-11. Defendants themselves quote that description, ECF No. 40, p. 9, and they do not dispute that the second inmate "had been seated underneath Defendant Denberg" before he stood, ECF No. 40-1, p. 52 (Undisputed Fact 61). A jury could infer from the officers' own precautions that they recognized the second arrival as a threat to Plaintiff, and from what followed that they disregarded that threat. The decisions Defendants cite found no realistic opportunity to intervene in events that lasted seconds. ECF No. 40, pp. 2, 10. They do not address officers who, on the plaintiff's account, kept a second arrival under watch for more than a minute after his companion's unprovoked attack and then let him rise and charge.

The inquiry must be individualized and "focus on the duties and responsibilities of each individual defendant." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988). The evidence is strongest as to Denberg, who, on Plaintiff's account, had been warned that an assault was likely, was standing over the second inmate, and allowed him to stand. But the evidence permits a finding of deliberate indifference as to each of the others as well. Kong and Kinross were responsible for escorting both arrivals, secured only the first, and, with Armstrong and Silva, stood in front of Plaintiff and moved aside as the second inmate charged. ECF No. 35-2, pp. 10-12; ECF No. 38, pp. 5, 43. Armstrong announced the arrivals and, for more than a minute, ordered Plaintiff to the floor while the second inmate remained unrestrained nearby. ECF No. 35-2, pp. 8-10, 14. Silva's declaration places him at the front door when the fight began, ECF No. 35-8, p. 2, but on Plaintiff's account he joined Armstrong in front of Plaintiff during the interval before the second attack, ECF No. 35-2, pp. 10-11. The evidence that Armstrong and Silva knew the second inmate was unrestrained and posed a threat rests on their proximity to the events and on Plaintiff's and Carter's testimony that the officers watched. That evidence is less direct than the evidence against Denberg, Kong, and Kinross, but it is sufficient to create a genuine dispute.

Because a genuine dispute exists as to whether each custodial Defendant was deliberately indifferent in the moments before the second attack, the Court need not decide whether the evidence of what Defendants knew before the first inmate attacked (Plaintiff's warning to Denberg, the announcement that "active" inmates were arriving, the size of the escort, and Plaintiff's testimony about prior assaults by arriving inmates *see* ECF No. 35-8, p. 2; ECF No. 38,

pp. 2, 5, 17-18, 42) would independently suffice. Both attacks occurred within about two minutes as part of a single incident, and Defendants' experience with arriving inmates before August 18, 2022, is the subject of discovery ordered above, which Defendants themselves placed at issue. The Court should decline to parse the claim further at this stage. *See Anderson*, 477 U.S. at 255 (trial court may deny summary judgment "where there is reason to believe that the better course would be to proceed to a full trial").

Summary judgment should be denied as to Defendants Denberg, Kong, Kinross, Armstrong, and Silva.

4. Punitive Damages

Defendants argue that Plaintiff has no evidence of the evil motive or reckless indifference required for punitive damages. ECF No. 35, p. 17. Punitive damages may be awarded under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). The evidence that would permit a jury to find the custodial Defendants deliberately indifferent—that they stood aside as an unrestrained inmate charged an inmate who had been attacked moments earlier—would also permit a jury to find reckless or callous indifference. *See Dang v. Cross*, 422 F.3d 800, 807-08 (9th Cir. 2005). Whether to award punitive damages is a question for the jury. Summary judgment on this ground should be denied as to the custodial Defendants; it is moot as to Gipson.

5. Qualified Immunity

Defendants' qualified immunity argument rests on their version of events: a routine transfer, a sudden attack lasting seconds, and an immediate response. ECF No. 35, pp. 17-18. On summary judgment, however, the Court must resolve disputed facts in Plaintiff's favor. *Martinez*, 323 F.3d at 1184. Taking Plaintiff's account as true, the custodial Defendants violated his Eighth Amendment rights, and the right at issue was clearly established on August 18, 2022. Since Farmer, it has been settled that prison officials must take reasonable measures to protect inmates from violence at the hands of other inmates once they know of a substantial risk. 511 U.S. at 833, 847; *see Wilk v. Neven*, 956 F.3d 1143, 1150 (9th Cir. 2020) (right to be protected from violence

at the hands of other inmates "has been clearly established since" *Farmer*). By 2022, the Ninth Circuit had also held that an officer escorting inmates may be found deliberately indifferent for failing to protect one inmate from others in the escort, *Cortez*, 776 F.3d at 1050-52, and that a prison official may violate the Eighth Amendment by failing to intervene, *Robins*, 60 F.3d at 1442. A reasonable officer would have understood that leaving an unrestrained, newly arrived inmate near an inmate whom the first arrival had just attacked, and then standing aside as the second inmate rose and charged, violated the Eighth Amendment. *See Hope*, 536 U.S. at 741. Defendants may renew their qualified immunity defense at trial on a fully developed record, but they are not entitled to summary judgment on it.

## V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for an extension of time, ECF No. 36, is GRANTED nunc pro tunc, and Plaintiff's opposition, ECF No. 38, is deemed timely.
2. Defendants' motion for an extension of time, ECF No. 39, is GRANTED nunc pro tunc, and Defendants' reply, ECF No. 40, is deemed timely.
3. Defendants' motion to extend the fact-discovery, motion-to-compel, and dispositive-motion deadlines, ECF No. 32, is DENIED as moot.
4. Plaintiff's motion to compel and for sanctions, ECF No. 31, is GRANTED in part and DENIED in part, as follows:
    a. Within 30 days of the date of this order, Defendant Denberg shall serve an amended response to Plaintiff's request for admission 19 that complies with Federal Rule of Civil Procedure 36(a)(4).
    b. Within 30 days of the date of this order, Defendant Denberg shall serve a supplemental response to Plaintiff's request for production 4, as narrowed in this order, and produce the responsive documents, or shall serve the declaration described in Section III.D.4 of this order.

c. Within 30 days of the date of this order, Defendant Denberg shall serve a supplemental response to Plaintiff's request for production 7 and produce responsive training materials in effect on or before August 18, 2022.

d. Within 30 days of the date of this order, Defendant Denberg shall produce the CDCR Form 7219 completed for inmate Rivera in connection with Incident Log No. 43687 on August 18, 2022, redacted as described in Section III.D.5 of this order.

e. Within 30 days of the date of this order, Defendant Denberg shall serve a supplemental response to Plaintiff's request for production 14, as narrowed in this order, and produce any responsive, non-privileged documents. Any responsive document withheld on the basis of privilege shall, within the same period, be identified in a privilege log served on Plaintiff, supported by a declaration that satisfies Kelly v. City of San Jose, 114 F.R.D. 653 (N.D. Cal. 1987), and lodged with the Court, without being filed on the docket, for in camera review.

f. Within 30 days of the date of this order, Defendant Denberg shall serve a supplemental response to Plaintiff's request for production 16 as described in Section III.D.7 of this order.

g. Documents produced under this order may be redacted to remove the names, CDCR numbers, and other identifying information of non-party inmates, except where this order provides otherwise. Any document withheld in whole or in part on the basis of privilege shall be identified in a privilege log. Plaintiff shall use documents produced under this order solely for purposes of this litigation and shall not share them with other inmates.

h. The motion is otherwise DENIED, including as to Plaintiff's request for sanctions.

5. Discovery is reopened for the limited purpose of compliance with this order. Any motion concerning the sufficiency of Defendant Denberg's responses under this order shall be filed within 30 days after those responses are served.

6. Defendants' request to strike the declaration of Charles Lee Carter under Federal Rule of Civil Procedure 37(c)(1), ECF No. 40-2, is DENIED.

Further, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment, ECF No. 35, be GRANTED in part and DENIED in part;

2. Summary judgment be GRANTED in favor of Defendant Gipson;

3. The motion be DENIED in all other respects, including as to punitive damages and qualified immunity; and

4. This action proceeds on Plaintiff's Eighth Amendment safety claims against Defendants Denberg, Kong, Kinross, Armstrong, and Silva.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within **14 days** after being served with these findings and recommendations, any party may file written objections with the Court. Responses to objections shall be filed within **14 days** after service of objections. Failure to file objections within the specified time may waive the right to appeal. *See Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: November 2, 2026

ILA C. DEISS
UNITED STATES MAGISTRATE JUDGE